NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0142n.06

No. 20-1137

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Mar 18, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| PAUL NICOLETTI, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:   BATCHELDER, STRANCH, and NALBANDIAN, Circuit Judges

ALICE M. BATCHELDER, Circuit Judge.  A jury convicted defendant-appellant Paul Nicoletti for his role in a 2005 bank-fraud conspiracy.  Nicoletti, who owned a title company, assisted in defrauding a mortgage broker, Fifth Third Mortgage, MI., LLC ("Fifth Third Mortgage Michigan") by using straw buyers and fraudulent documents to get sham mortgages.  Nicoletti argues that the government failed to prove by a sufficiency of the evidence that he committed bank fraud against a "financial institution" as it was defined by federal law in 2005.  Fifth Third Mortgage Michigan did not qualify as a financial institution in 2005 but Nicoletti does not dispute that other Fifth Third components, namely Fifth Third Bank Michigan and Fifth Third Bank Ohio, did.  *See* 18 U.S.C. § 20(1) (1990) (amended 2009).  Our two issues are narrow: (1) did the government prove that Nicoletti, directly or through a conspiracy, fraudulently obtained bank property from a financial institution—namely a federally insured component of Fifth Third

Bank—through a misrepresentation; and (2) did the government prove that he had adequate scienter when doing so? Because the government met its burden of proof, we AFFIRM.

Nicoletti also appeals the district court's order that he pay restitution as an immediate, lump-sum payment. The district court granted a motion to reconsider the restitution award and set a payment schedule. Therefore, as both parties acknowledge, the district court already granted the relief Nicoletti seeks. We DISMISS this issue as moot.

Finally, Nicoletti moves this court to review the district court's denial of bond pending appeal and for us to grant him bond pending appeal. His appeal being over, we DISMISS his motion as moot.

## I. Facts

In 2005, Nicoletti was a registered attorney and title agent in Michigan. He ran a law firm, Nicoletti and Associates, and a title company, Continental Title. His offices sat directly above a "Fifth Third"-branded storefront, which housed branches of Fifth Third Bank Michigan and Fifth Third Mortgage Michigan.

### A. Structure of Fifth Third Bancorp.

The entity known as "Fifth Third" encompasses a variety of components. At the top is Fifth Third Bancorp, which serves as a parent holding company. Beneath Fifth Third Bancorp is an intermediate holding company that owns the company's actual banks. Two are relevant here: Fifth Third Bank Ohio and the now-defunct Fifth Third Bank Michigan. Both Fifth Third Bank Ohio and Fifth Third Bank Michigan were insured in 2005 by the Federal Deposit Insurance Corporation ("FDIC").

The other relevant Fifth Third entity to this case is Fifth Third Mortgage Michigan. In 2005, Fifth Third Bank Michigan owned one percent of Fifth Third Mortgage Michigan. The other

99% of Fifth Third Mortgage Michigan was owned by Old Kent Mortgage Services, itself a wholly owned subsidiary of Fifth Third Bank Michigan. Fifth Third Mortgage Michigan was not insured by the FDIC. All of Fifth Third Mortgage Michigan's funding for loans came from bank accounts maintained at either Fifth Third Bank Michigan or Fifth Third Bank Ohio.

## B. The Conspiracy.

In 2005, Nicoletti participated in a conspiracy to obtain high-value mortgage loans fraudulently from Fifth Third Mortgage Michigan using straw buyers and falsified records.[1] The scheme involved Robert Hance, a Fifth Third Mortgage Michigan loan officer frustrated by a cap put on his commissions; real estate developers Tyrone Hogan, Matthew Flynn, and Robert Schumake; and Alan Lucia, Nicoletti's friend and former business partner. The men sought out people with strong credit scores to be straw buyers, paid them to use their name and credit history to obtain mortgages, and promised them part of the expected profit from their "investment" in the property. Hance, with help from Hogan, falsified documents to inflate the straw buyers' assets and income so they would qualify for higher mortgage loans. The loan applications falsely stated that the straw buyers planned to use the purchased properties as primary residences.

Nicoletti played several roles in the scheme. He brought Scott Lucia, Alan's brother, in as a straw buyer after Nicoletti failed to recover all of a contested $20,000 down payment that Scott had made on a house. Nicoletti served as the title agent on six fraudulent transactions, helped coordinate and close real estate closings, prepared fraudulent HUD1 settlement statements, and received and disbursed the proceeds of the mortgage loans through Continental Title's checking account at Fifth Third Bank Michigan. Once proceeds from each respective fraudulent loan

---

[1] Nicoletti does not dispute that the record, viewed in a light most favorable to the government, shows he took part in a conspiracy to obtain sham mortgages; he only disputes that his conduct, based on the law in 2005, constituted a federally actionable offense.

entered Continental Title's account, Nicoletti used the money to purchase cashier's checks from Fifth Third Bank Michigan in the name of the straw buyer of that transaction. Nicoletti would deposit the cashier's checks back into the Continental Title account to pose as the straw buyer's down payment.

## C.  The Conspiracy's Unraveling.

On November 9, 2005, a Fifth Third Internal Investigation Unit confronted Hance at a bank office. The investigators told Hance that they were aware of the fraudulent loans and requested that he hand over all of his Fifth Third Mortgage Michigan property, including his laptop. Hance had used his Fifth Third Mortgage Michigan-issued laptop to forge fraudulent loan documents. The laptop was at Hance's house. He convinced the investigators to follow him to his house, but to wait around the corner to avoid tipping off his wife that something was wrong. The investigators allowed Hance to drive home alone. Hance called Nicoletti, who told him to take the laptop to Scott Lucia's computer repair shop so Scott could wipe the hard drive. Hance ducked the investigators, took the laptop to Scott's shop, and Scott exchanged the tainted hard drive for a clean one to give the Fifth Third investigators before wiping the tainted hard drive using a different computer.

## II.  Procedural Background

The government waited to indict Nicoletti until after five co-conspirators pleaded guilty. The indictment, issued in 2015, charged Nicoletti with one count of conspiracy to commit bank fraud under 18 U.S.C. § 1349 and three counts of bank fraud, aiding and abetting under 18 U.S.C. §§ 1344(1) and (2). The government abandoned the 18 U.S.C. § 1344(1) charges prior to trial.

In a pre-trial motion to dismiss, Nicoletti first raised the argument that he makes here: that he defrauded Fifth Third Mortgage Michigan, not Fifth Third Bank Michigan or Fifth Third Bank

Ohio, and therefore could not be prosecuted under 18 U.S.C. § 1344(2) or any federal law, and the district court therefore lacked jurisdiction.[2] The district court denied the motion. After additional motion practice, the trial took place in April and May of 2019. During trial, Nicoletti unsuccessfully brought a Rule 29 motion seeking dismissal on the same jurisdictional ground. The jury found Nicoletti guilty on all counts. After trial, Nicoletti renewed his Rule 29 motion for judgment of acquittal on the same argument. The court again denied relief.

The district court sentenced Nicoletti to 70 months in prison on each count (to run concurrently), a term significantly longer than any other member of the conspiracy received but well below the 108–35-month guideline range. It also ordered Nicoletti to pay immediately restitution of $5,299,751.58. Nicoletti moved for reconsideration of the restitution payment order, and the court replaced the immediate lump-sum payment with a payment schedule. Nicoletti timely appeals, claiming the government did not sufficiently prove the conspiracy or bank fraud counts beyond a reasonable doubt and that the district court abused its discretion by ordering that Nicoletti pay restitution in an immediate lump-sum payment.[3]

### III.  Sufficiency of the Evidence

Nicoletti raises three challenges to the sufficiency of the evidence: whether (1) he intended to fraudulently obtain bank property from a qualifying financial institution, (2) he obtained bank property through a misrepresentation, and (3) he intentionally took part in a conspiracy to commit bank fraud under 18 U.S.C. § 1349. His arguments fail as to all three.

---

[2] Nicoletti does not raise jurisdiction in his statement of the issues, but briefly discusses it in his opening brief. The jurisdiction argument is directly analogous to Nicoletti's sufficiency argument, and we likewise would deny relief, so we decline to address the argument more fully.

[3] Nicoletti filed his initial brief before the district court granted his motion to reconsider. As both parties acknowledge, the issue is moot.

## A. Standard of Review

Nicoletti's appeal formally challenges the district court's denial of his Rule 29 motion for judgment of acquittal due to insufficient evidence. For this challenge we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "[W]e draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001). We will only "reverse a judgment for insufficient evidence if, after viewing the record as a whole, we conclude that the judgment is not supported by substantial and competent evidence." *United States v. Prince*, 214 F.3d 740, 746 (6th Cir. 2000).

## B. 18 U.S.C. § 1344 Bank Fraud.

There are two forms of federal bank fraud, both codified in 18 U.S.C. § 1344: (1) defrauding a financial institution; and (2) obtaining "any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." The former is a Section 1344(1) charge, the latter a Section 1344(2) charge. The government indicted Nicoletti on three counts under each subsection, but it abandoned the Section 1344(1) charges before trial.

Section 1344(2) reads:

Whoever knowingly executes, or attempts to execute, a scheme or artifice . . . to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344(2). This breaks down into two elements that the defendant must knowingly either do or attempt to do:

> First, the clause requires that the defendant intend "to obtain any of the moneys . . . or other property owned by, or under the custody or control of, a financial institution." (We refer to that element, more briefly, as intent "to obtain bank property.") And second, the clause requires that the envisioned result—*i.e.*, the obtaining of bank property—occur "by means of false or fraudulent pretenses, representations, or promises."

*Loughrin v. United States*, 573 U.S. 351, 355–56 (2014) (alteration in original, internal citations omitted).

Nicoletti's appeal deals with a narrow issue of law. The charged conduct occurred in 2005. At that time, Fifth Third Mortgage Michigan did not qualify as a "financial institution" under the relevant statute, which was amended in 2009. 18 U.S.C. § 20 (1990). Therefore, the jury could not convict Nicoletti under 18 U.S.C. § 1344(2) for defrauding Fifth Third Mortgage Michigan. *See United States v. Banyan*, 933 F.3d 548, 552 (6th Cir. 2019). But the government alleged that Nicoletti defrauded Fifth Third Bank Michigan and Fifth Third Bank Ohio, both of which qualified in 2005 as financial institutions. The government therefore needed to prove that Nicoletti: (1) knowingly obtained or intended to obtain bank property from Fifth Third Bank Michigan and/or Fifth Third Bank Ohio (2) by means of a misrepresentation.

### 1. Intent to obtain bank property.

Nicoletti first argues that the government failed to prove that he intended to obtain bank property from a financial institution. The government could not meet this element by relying the subsidiary relationship between Fifth Third Mortgage Michigan and Fifth Third Bank Michigan. *Banyan*, 933 F.3d at 552–54 (rejecting the government's argument that defrauding a subsidiary is the same as defrauding a parent company because a "basic tenet of American corporate law is that the corporation [here, the mortgage companies] and its shareholders [here, the banks] are distinct entities." (citing *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003)) (alterations in original)). "[T]he government needed to prove, as the first element of § 1344(2), that [Nicoletti] intended to

obtain bank property, rather than the property of the mortgage compan[y]." *Id.* at 553. "Bank property" is a term of art; it includes any "moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of," the financial institution. 18 U.S.C. § 1344(2).

This court previously suggested in dicta that the government can potentially meet the bank-property element by showing that a bank "funded the loans at issue and that the defendant[] [was] aware of such funding." *Banyan*, 933 F.3d at 553. Two other circuits have implied a similar conclusion in precedential opinions, though "very few cases have discussed this dilemma." *Id.* at 557 (Siler, J., dissenting); *United States v. Bouchard*, 828 F.3d 116, 127 (2d Cir. 2016) ("[T]he Government might have been able to prove that [Defendant] knew that money from mortgage lenders came from banks by virtue of his knowledge of the industry."); *United States v. Edelkind*, 467 F.3d 791, 797–98 (1st Cir. 2006) ("Neither the statute nor the case law fully instructs just how tight a factual nexus is required to allow a jury to decide that a scheme, formally aimed at one (uninsured) company, operates in substance to defraud another (insured) entity with whom the defendant has not dealt directly. In our view the statute does apply where the federally insured institution takes part in an integrated transaction and is thereby injured by the defendant, who intended to defraud another party to the transaction."). The *Banyan* dicta complies with both the language of 18 U.S.C. § 1344(2) and the relevant Supreme Court precedent. *See Loughrin*, 573 U.S. at 355–56. We therefore adopt *Banyan*'s dicta as an operative rule: the government may prove that a defendant intended to fraudulently obtain bank property from a financial institution by showing that (1) the defendant defrauded a non-qualifying mortgage company, (2) the resulting loan was funded by bank property from a qualifying financial institution, and (3) the defendant was aware that the loans were funded by a bank.

Here, the first two *Banyan* elements are satisfied. The Government adduced testimony at trial stating that Nicoletti presented false and fraudulent documents to Fifth Third Mortgage Michigan as part of the conspiracy. And a rational juror could infer, from witness testimony, that the relevant Fifth Third Mortgage Michigan loans were funded by money kept in the custody of either Fifth Third Bank Michigan or Fifth Third Bank Ohio.

It is worth clarifying that funds housed in an account at a "financial institution" are typically within that institution's "custody." In *Shaw v. United States*, 137 S. Ct. 462, 466 (2016), the Supreme Court concluded, albeit in a case dealing with Section 1344(1)—not Section 1344(2)—bank fraud, that "for purposes of the bank fraud statute, a scheme fraudulently to obtain funds from a bank depositor's account normally is also a scheme fraudulently to obtain property from a 'financial institution,' at least where . . . the defendant knew that the bank held the deposits, the funds obtained came from the deposit account, and the defendant misled the bank in order to obtain those funds." *See also United States v. Lebedev*, 932 F.3d 40, 49 (2d Cir. 2019) (holding that Section 1344(2) covered acting "with the intent to obtain funds under [banks'] custody and control; namely, funds in the customers' accounts").

Nicoletti claims that the government did not sufficiently prove the third *Banyan* element, i.e., that he knew the loans were funded by a bank. This argument fails for several reasons. First, Nicoletti admitted at trial that he swore in an affidavit that the fraudulent loans (and the certified checks used to mimic down payments) were funded by Fifth Third Bank. This admission alone would be sufficient to affirm. But there's more.

Second, Nicoletti prepared the HUD1 settlement statements for each of the six closings. Two of these HUD1 statements—the first two chronologically—identify the lender as "Fifth Third Bank" in Cincinnati, meaning Fifth Third Bank Ohio. Nicoletti also signed pages for one of the

HUD1 settlement statements that directly identified the lender as "Fifth Third Bank 38 Fountain Square Plaza Cincinnati, OH." A rational juror could find that, because two of the HUD1 settlement statements Nicoletti prepared identify Fifth Third Bank as the lender, Nicoletti knew that bank property of Fifth Third Bank funded the loan.

Third, the government included in evidence a fax cover page with the final chronological HUD1 settlement statement. The fax was sent from Nicoletti to Robin Vandenberg, with the message, "Final HUD for your approval." Nicoletti's "company" was listed as "CTIAI," or Continental Title. Vandenberg's company was listed as "Fifth Third Bank." From this, a rational juror could infer that Nicoletti prepared HUD1 settlements for Continental Title and that Vandenberg worked for Fifth Third Bank Michigan. Drawing all reasonable inferences and weighing credibility in the light most favorable to the government, we find that a rational juror could rely on the fax cover page at least to find that Nicoletti *intended* to defraud Fifth Third *Bank* Michigan at the time of the final loan, creating liability. 18 U.S.C. § 1344 (emphasis added) (criminalizing "knowingly execut[ing], *or attempt[ing] to execute*, a scheme or artifice.").

Fourth, the last chronological loan was funded by a series of official checks from Fifth Third Bank Eastern Michigan—another name for Fifth Third Bank Michigan—addressed to Continental Title. A rational juror could find that, because Nicoletti's title company received funding for the fraudulent loan directly from a bank, he was aware that bank property funded the loan.

Therefore, the government presented sufficient evidence at trial to prove beyond a reasonable doubt that Nicoletti violated the bank-property element of Section 1344(2) bank fraud.

## 2. By means of a misrepresentation.

Next, Nicoletti argues that the government did not prove that he sought to obtain property of Fifth Third Bank Michigan or Fifth Third Bank Ohio by means of a misrepresentation. This

argument goes to the second element of Section 1344(2), "that the envisioned result . . . occur[red] by means of false or fraudulent pretenses, representations, or promises." *Loughrin*, 573 U.S. at 355–56 (internal quotation marks removed). Nicoletti argues that, because his misrepresentations were directed to Fifth Third Mortgage Michigan, the jury could only speculate that the misrepresentations made their way to Fifth Third Bank Michigan or Fifth Third Bank Ohio. He misapplies the law.

"[N]othing in the [misrepresentation element] . . . demands that a defendant have a specific intent to deceive a bank." *Loughrin*, 573 U.S. at 356–57. The "language is satisfied when . . . the defendant's false statement is the mechanism naturally inducing a bank (or custodian of bank property) to part with money in its control." *Id.* at 363 (holding that a person who used fraudulent checks to purchase items at Target and return those items for a cash refund violated this element because the fraudulent checks were the mechanism inducing a bank to give money in its control to the retailer). The clause "covers false representations to persons *other than the bank* so as to gain control of property in the custody of the bank." *United States v. Selgjekaj*, 678 F. App'x 379, 384 (6th Cir. 2017) (emphasis added) (citing *Loughrin*, 573 U.S. at 356). This court suggested in *Banyan* that a mortgage company is the custodian of its parent bank's property when the bank funds the subsidiary mortgage company's loans. *Banyan*, 933 F.3d at 555 ("[T]he mortgage companies were not custodians of the bank's property, on this record, because the banks did not fund the subject loans.").

Here, a reasonable juror could have inferred from the evidence adduced at trial that Nicoletti directed false statements to Fifth Third Mortgage Michigan in an attempt to fraudulently obtain loans funded by Fifth Third Bank Michigan or Fifth Third Bank Ohio. Hence, the

government presented sufficient evidence for a reasonable jury to find that Nicoletti violated the Section 1344(2) misrepresentation prong.

Alternatively, recall that Nicoletti sent the HUD1 settlement statement from a fraudulent loan to Vandenberg, who was listed as a Fifth Third Bank employee on the fax cover page. Again, judging the evidence in the light most favorable to the government, we find that a rational juror could infer that Vandenberg either worked at Fifth Third Bank Michigan or Nicoletti thought that she did. With that inference in place, this fax shows that Nicoletti either successfully directed a HUD1 settlement statement containing false representations to a Fifth Third Bank Michigan employee in the process of securing a loan funded by Fifth Third Bank Michigan official checks, or intended to do so. This also satisfies the misrepresentation element.

## C. Conspiracy to Commit Bank Fraud.

Nicoletti's sole argument against his conspiracy-to-commit-bank-fraud conviction is that the government failed to establish that he intended to defraud—or agreed to defraud—a qualifying financial institution. As established above, the government presented sufficient evidence to prove—and Nicoletti admitted on the stand—that he intended to fraudulently obtain bank property from Fifth Third Bank Michigan or Fifth Third Bank Ohio. Therefore, Nicoletti presents no valid argument for reversing his conspiracy conviction.

## IV. Motion for Bond Pending Appeal

Nicoletti moves this court to review and reverse the district court's denial of bond pending appeal, and to set bond. The district court denied Nicoletti's motion for bond pending appeal, but has repeatedly granted extensions to Nicoletti's date for voluntary surrender. Having affirmed Nicoletti's conviction, we now dismiss his motion as moot.[4]

---

[4] We note for thoroughness that we would have affirmed the district court had the motion not been mooted.

**V. Conclusion**

For the foregoing reasons, we AFFIRM the district court's denial of Nicoletti's Rule 29 motion for judgment of acquittal, DISMISS Nicoletti's challenge to the restitution order, and DISMISS Nicoletti's motion for bond pending appeal.