**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-10313

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ZSA ZSA BOUVIER COUCH,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:21-cr-00185-KKD-CWB-1

_____

Before BRANCH, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

A jury found Zsa Zsa Couch guilty of five counts of bank fraud, six counts of making a false statement to a federally insured bank, and two counts of money laundering after she fraudulently

obtained government-backed loans through the Paycheck Protection Program. Couch appeals her convictions on the bank fraud and money laundering counts only, arguing that the district court erred when it denied her motion for a judgment of acquittal because the government failed to present sufficient evidence at trial that any "financial institution" was the victim of her fraud scheme. Because we conclude that the government presented sufficient evidence for a reasonable jury to conclude that at least two federally insured financial institutions had custody or control over program funds that Couch fraudulently obtained, we affirm.

## FACTUAL BACKGROUND

In 2020, in response to the Covid-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act to fund the Paycheck Protection Program to provide economic relief to small businesses. Under the program, lenders—primarily banks—made loans to qualified business owners to help them stay in business. Program funds were restricted to payroll costs, mortgage interest, rent, utilities, and other expenses, and the applicant's average payroll expenses determined the amount of the loan. To obtain a program loan, the applicant had to submit a loan application, which required listing the business's average monthly payroll expenses and number of employees; certifying that the information was true and accurate; acknowledging that making a false statement on the application was a crime; and providing supporting tax documents. The Small Business Administration oversaw the program and provided a "100 percent guarantee of the loan." If the

24-10313                Opinion of the Court                3

loan proceeds were used appropriately, the Administration would forgive or reimburse the lender for the loan.

Couch applied to Trustmark National Bank and Regions Bank for program loans for several businesses, including Trinity Christian Ministries, Kidz Academy Christian Child Care Center, Slim Fit Weight Loss Medical Clinic, and Bouvier Hair Boutique. Couch received five program loans from the two banks totaling $609,687.47.

## PROCEDURAL HISTORY

On April 7, 2021, a federal grand jury indicted Couch for five counts of bank fraud, in violation of 18 U.S.C. sections 2 and 1344(2) (counts one through five); six counts of making a false statement to a federally insured bank, in violation of 18 U.S.C. sections 2 and 1014 (counts six through eleven); and two counts of money laundering, in violation of 18 U.S.C. sections 2 and 1957(a) (counts twelve through thirteen). In counts one through five, the government alleged that Couch committed bank fraud to get five program loans by providing false financial information to two federally insured financial institutions, allowing her to access money "owned by and under the custody and control" of the banks. In counts six through eleven, the government alleged that Couch had made false representations to Trustmark and Regions concerning the number of people she employed, her average monthly payroll, and tax information related to the businesses. In counts twelve and thirteen, the government alleged that Couch committed two counts of money laundering by using the fraudulently procured program

funds to purchase an Audi and a Mercedes-Benz. Couch proceeded to trial.

After the government rested, she moved for a judgment of acquittal on the bank fraud and money laundering counts. In her motion, Couch argued that the money laundering counts were "dependent upon" the bank fraud counts; that the government's evidence proved that the program funds came from the Administration instead of a financial institution; and that because the Administration is not a financial institution, as defined in 18 U.S.C. section 20, the government had not produced sufficient evidence for the jury to find her guilty of the bank fraud and money laundering. The district court denied the motion, and the jury returned a guilty verdict on all thirteen counts. On January 16, 2024, the district court sentenced Couch to forty-five months' imprisonment followed by three years' supervised release and ordered $690,687.47 in restitution.

Couch timely appealed.

## STANDARD OF REVIEW

We review de novo the denial of a motion for a judgment of acquittal. *United States v. Bowman*, 302 F.3d 1228, 1237 (11th Cir. 2002) (citing *United States v. Perez-Tosta,* 36 F.3d 1552, 1556 (11th Cir. 1994)). "When the motion raises a challenge to the sufficiency of the evidence, we review the sufficiency of the evidence de novo, drawing all reasonable inferences in the Government's favor." *Id.* (footnote omitted) (citing *Perez-Tosta,* 36 F.3d at 1556). "We will refuse to overturn a conviction 'if any reasonable construction of

the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt.'" *United States v. Schreck*, 130 F.4th 1297, 1301 (11th Cir. 2025) (quoting *United States v. Grow*, 977 F.3d 1310, 1320 (11th Cir. 2020)).  We review de novo matters of statutory interpretation.  *Id.* (citing *United States v. Shamsid-Deen*, 61 F.4th 935, 946 (11th Cir. 2023)).

## DISCUSSION

The sole issue for us to decide is whether the district court erred in denying Couch's motion for a judgment of acquittal as to the five bank fraud counts and the two money laundering counts. Framing her argument "as one challenging the sufficiency of the evidence supporting h[er] convictions," *id.* (citing *United States v. Williams*, 790 F.3d 1240, 1244 (11th Cir. 2015)), Couch doesn't dispute that Trustmark and Regions are financial institutions, arguing instead that the Administration, as the ultimate guarantor of the program funds, was the actual victim of her scheme.  According to Couch, because the Administration "does not meet the criteria of a financial institution, bank fraud was not established, and, in turn, money laundering was not established."  In other words, "this appeal turns on matters of statutory interpretation, as [Couch] argues that, under the 'correct' interpretation of the relevant criminal statute, the government failed to offer sufficient evidence to convict h[er]."  *See id.* (alteration adopted and internal quotation marks omitted) (quoting *Williams*, 790 F.3d at 1244).  Thus, "[t]o determine whether sufficient evidence supports [Couch's] convictions, we must interpret the text of the governing statute[s], . . . against the evidentiary record."  *See id.*  "Under principles of statutory

interpretation, 'we look to the plain and ordinary meaning of the statutory language as it was understood at the time the law was enacted.'" *Id.* at 1302 (quoting *United States v. Chinchilla*, 987 F.3d 1303, 1308 (11th Cir. 2021)).

We first address Couch's argument that she is entitled to a judgment of acquittal on the bank fraud counts before briefly addressing her argument as to the money laundering counts.

*The bank fraud counts*

Under section 1344, a person commits bank fraud when she "knowingly executes, or attempts to execute, a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or *under the custody or control of, a financial institution*, by means of false or fraudulent pretenses, representations or promises." 18 U.S.C. § 1344(1)–(2) (emphasis added). Title 18 defines a "financial institution" to include "an insured depository institution (as defined in section 3(c)(2) of the Federal Deposit Insurance Act)." 18 U.S.C. § 20(1). And section 3(c)(2) of the Federal Deposit Insurance Act defines an "insured depository institution" as "any bank or savings association the deposits of which are insured by the [Federal Deposit Insurance Corporation]." Federal Deposit Insurance Act, Pub. L. No. 81-797, 64 Stat. 873 (1950) (codified as amended at 12 U.S.C. § 1813(c)(2)).

Reading section 1344, we and the Supreme Court have made clear that a person can violate the bank fraud statute through "two alternative methods," either through section 1344(1) or

section 1344(2). *United States v. Dennis*, 237 F.3d 1295, 1303 (11th Cir. 2001); *Shaw v. United States*, 580 U.S. 63, 70–71 (2016) ("The two subsections overlap substantially but not completely."). From the face of Couch's indictment, it's clear that the government charged the bank fraud counts under section 1344(2).

In *Loughrin v. United States*, the Supreme Court explained that section 1344(2) "requires that a defendant 'knowingly execute, or attempt to execute, a scheme or artifice' with at least two elements." 573 U.S. 351, 355 (2014) (quoting 18 U.S.C. § 1344(2)). "First, the clause requires that the defendant intend 'to obtain any of the moneys . . . or other property owned by, or under the custody or control of, a financial institution.'" *Id.* (quoting 18 U.S.C. § 1344(2)). "[S]econd, the clause requires that the envisioned result—*i.e.,* the obtaining of bank property—occur 'by means of false or fraudulent pretenses, representations, or promises.'" *Id.* (quoting 18 U.S.C. § 1344(2)). *Loughrin* was also clear that, unlike section 1344(1), to sustain a conviction under section 1344(2), the government does not have to prove that a defendant specifically intended to defraud a financial institution. *Id.* at 353; *see also id.* at 357 ("[A] person violates § 1344(2)'s plain text by deceiving a non-bank custodian into giving up bank property that it holds."). And *Loughrin* also clarified that, to sustain a conviction under section 1344(2), the government doesn't have to prove that the defendant's scheme created a financial loss or risk of loss to any bank, stating:

> [N]othing like that element appears in the clause's text. Indeed, the broad language in § 1344(2) describing the property at issue—"property owned by or

> under the custody or control of" a bank—appears cal-
> culated to avoid entangling courts in technical issues
> of banking law about whether the financial institu-
> tion or, alternatively, a depositor would suffer the loss
> from a successful fraud.

573 U.S. at 366 n.9; *see also Shaw*, 580 U.S. at 67 (concluding that section 1344(1) "demands neither a showing of ultimate financial loss nor a showing of intent to cause financial loss.").

Our precedent points in the same direction. In *United States v. Martin*, we relied on *Loughrin* to conclude that, despite the possibility that a lending bank had suffered no risk of loss because of the defendant's fraud scheme, evidence that the defendant had submitted mortgage applications materially overstating her ability to repay mortgage loans was sufficient to prove a violation of section 1344(2). *See* 803 F.3d 581, 589–90 (11th Cir. 2015). In reaching that conclusion, we emphasized that the "scheme to defraud is all that the government must prove." *Id*. ("[B]ank fraud convictions under § 1344(2) do not require proof of loss—or even risk of loss—to a financial institution because 'the gravamen of § 1344 is the scheme, rather than the completed fraud.'" (quoting parenthetically *Loughrin*, 573 U.S. at 366 n.9)).

Applying section 1344(2) to the evidentiary record here, *see Schreck*, 130 F.4th at 1301, we conclude that the district court properly denied Couch's motion for a judgment of acquittal as to the bank fraud. The plain language of section 1344(2) provides that a person commits bank fraud when she "knowingly executes, or

24-10313               Opinion of the Court                    9

attempts to execute, a scheme or artifice to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations or promises." 18 U.S.C. § 1344(2).  A bank fraud scheme need not cause actual loss or risk of loss to a bank to constitute a violation, *see Martin* 803 F.3d at 589–90 (citing *Loughrin*, 573 U.S. at 366 n.9), and a defendant's specific intent to defraud a bank is not required to prove a violation, *Loughrin*, 573 U.S. at 353.  Instead, the gravamen of section 1344(2) "is the scheme, rather than the completed fraud."  *See Martin,* 803 F.3d at 589–90 (quoting parenthetically *Loughrin*, 573 U.S. at 366 n.9).

Thus, to prove a violation of 1344(2) here, the government needed to offer sufficient evidence that Couch knowingly executed or attempted to execute a scheme "to obtain any of the moneys . . . or other property owned by, or under the custody or control of, a financial institution" and that she did so "by means of false or fraudulent pretenses, representations, or promises."  *See* 18 U.S.C. § 1344(2).  The government has done so.

At trial, the government called representatives from Regions and Trustmark—two federally insured financial institutions that Couch concedes fall within section 20's reach—who testified that the two banks were the direct lenders of the program's loans, processed them, and paid them to recipients out of their own reserves, at least initially.  Even if the Administration later reimbursed the banks for the funds they dispersed to Couch, she can't get around

the fact that it was Regions and Trustmark that provided the initial program funds and deposited into Couch's bank accounts money that had been in the banks' custody or control. And since Couch doesn't dispute that she made false statements to Regions and Trustmark on her program loan applications in order to access the funds, the government presented sufficient evidence at trial for a reasonable jury to conclude that Couch knowingly intended to obtain "moneys" "under the custody or control of" a federally insured financial institution "by means of false or fraudulent pretenses, representations, or promises." *See* 18 U.S.C. § 1344(2).

Pushing back, Couch points to a pre-*Loughrin* case from the First Circuit to argue that she is entitled to a judgment of acquittal on the bank fraud counts because the government didn't prove at trial that any federally insured financial institution suffered any loss or risk of loss from her fraud scheme or prove that Couch had the specific intent to defraud a financial institution, since the Administration isn't one.

Couch's argument fails twice over for the reasons that we've already explained. First, *Loughrin* confirmed that loss or risk of loss to a financial institution is not an element of bank fraud under section 1344(2). *See* 573 U.S. at 366 n.9; *see also Martin*, 803 F.3d at 589–90 (stating the "scheme to defraud is all that the government must prove."). And second, *Loughrin* made clear that the specific intent to defraud a financial institution is not a requirement to sustain a conviction under section 1344(2). *See* 573 U.S. at 353.

In sum, we conclude that the government presented sufficient evidence at trial for a reasonable jury to find Couch guilty on each of the bank fraud counts. The district court didn't err in denying her motion for a judgment of acquittal as to those counts. That leaves the money laundering counts.

*The money laundering counts*

Couch also challenges the district court's denial of her motion for a judgment of acquittal as to the two money laundering counts. To sustain a conviction for money laundering under section 1957(a), the government must prove that a defendant "knowingly engage[d] or attempt[ed] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity[.]" 18 U.S.C. § 1957(a). Section 1957(f)(2) defines "criminally derived property" as "any property constituting, or derived from, proceeds obtained from a criminal offense[.]" *Id*. § 1957(f)(2). Section 1957(f)(3) defines "'specified unlawful activity' and 'proceeds'" as having "the same meaning given those terms in [18 U.S.C.] section 1956[.]" *Id*. § 1957(f)(3). And section 1956, in turn, includes within its reach "financial institution fraud" as a "specified unlawful activity" enumerated in section 1961(1). *See id*. § 1956(c)(7)(A) (providing that "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1)"); *id*. § 1961(1)(B) (listing "financial institution fraud" under section 1344).

On appeal, Couch argues that she's entitled to a judgment of acquittal on the money laundering counts because the district

court erred in denying her motion as to the bank fraud counts. But the district court didn't err in denying Couch's motion for a judgment of acquittal on the money laundering counts because "financial institution fraud" under section 1344 is one of the enumerated "specified unlawful activity" predicate offenses that can sustain a conviction for money laundering under section 1957(a). *See* 18 U.S.C. § 1957(a)–(f); *id.* § 1956(c)(7)(A); *id.* § 1961(1)(B). And because, as we've already explained, the district court didn't err in denying Couch's motion for a judgment of acquittal as to the bank fraud counts, the district court didn't err in denying Couch's motion as to the money laundering counts either.

**AFFIRMED.**