**[J-67A-2022, J-67B-2022 and J-67C-2022] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 3 WAP 2022 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court entered September |
| | : | 10, 2021 at No. 1271 WDA 2020, |
| v. | : | Vacating the Order of the Court of |
| | : | Common Pleas of Washington |
| | : | County entered August 14, 2020 at |
| KEITH ROSARIO, | : | No. CP-63-CR-000223-2015 and |
| | : | remanding. |
| Appellee | : | |
| | : | ARGUED: October 26, 2022 |

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 4 WAP 2022 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court entered September |
| | : | 10, 2021 at No. 1272 WDA 2020, |
| v. | : | Vacating the Order of the Court of |
| | : | Common Pleas of Washington |
| | : | County entered August 14, 2020 at |
| KEITH ROSARIO, | : | No. CP-63-CR-001543-2013 and |
| | : | remanding. |
| Appellee | : | |
| | : | ARGUED: October 26, 2022 |

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 5 WAP 2022 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court entered September |
| | : | 10, 2021 at No. 1273 WDA 2020, |
| v. | : | Vacating the Order of the Court of |
| | : | Common Pleas of Washington |
| | : | County entered August 14, 2020 at |
| KEITH ROSARIO, APPELLEE | : | No. CP-63-CR-001262-2013 and |
| | : | remanding. |
| | : | |
| | : | ARGUED: October 26, 2022 |

## DISSENTING OPINION

**JUSTICE MUNDY**                                      **DECIDED: MAY 16, 2023**

Probation is inherently conditional.  So long as the conditions are met, probation allows a defendant the opportunity to rehabilitate outside of incarceration.  It is with that fundamental principle in mind that sentencing judges carefully balance the gravity of the offense, the protection of the public, and the rehabilitative needs of the defendant before imposing probation and deciding the conditions that define the probationary sentence.[1] When a defendant violates a condition of probation, that balance is changed.  And so, to account for that change, a court may increase conditions of probation, impose sanctions, or revoke an order of probation "upon proof of the violation of specified conditions of probation."  42 Pa.C.S. § 9771(b).

This case asks us to interpret Section 9771(b) to determine when a sentencing court may revoke probation.  Because the very existence of a probationary sentence is conditional, I believe it is clear that a defendant must comply with those conditions to be entitled to serve a probationary sentence.  Therefore, if a defendant violates a condition of probation before his probationary period has begun, the plain statutory requirements of Section 9771(b) have been met and the court may revoke probation.

I start, as the majority does, with the plain language of the statute at issue.  The statute governing revocation of probation states:

> **(b) Revocation.—**The court may increase the conditions, impose a brief sanction under section 9771.1 (relating to court-imposed sanctions for violating probation) or revoke an order of probation upon proof of the violation of specified conditions of probation.

---

[1] In determining a sentence, "the court shall follow the general principle that the sentence imposed should call for total confinement that is consistent with section 9725 (relating to total confinement) and the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant."  42 Pa.C.S. § 9721(b).

42 Pa.C.S. § 9771(b). Subsection (b) goes on to explain the options for resentencing, but the above cited portion is the operative language for *when* a court may revoke. As it plainly reads, the court may revoke after a showing that the defendant violated the conditions of probation. It is undisputed that a general condition of probation is to lead a law-abiding life and it is a violation of probation to commit a new crime. *Commonwealth v. Foster*, 214 A.3d 1240, 1250 (Pa. 2019) ("[A] court may find a defendant in violation of probation only if the defendant has violated one of the 'specific conditions' of probation included in the probation order or has committed a new crime."). And so, when Appellee in today's case committed a new crime by kidnapping and shooting a man in the back of the head, he violated the conditions of probation, and the court was permitted to revoke that probation.[2]

My fundamental disagreement with the majority stems from its conclusion that the conditions of probation do not attach until the term specified in the probation order begins. Maj. Op. at 14 ("only a violation of the probation itself may trigger revocation, not a violation of the probation order before the probation term has started."). As described above, the very existence of a probation order is conditional. A defendant is given the opportunity to serve his sentence outside of prison so long as he complies with the conditions of probation. The sentencing judge attaches conditions to the order of

---

[2] The Black's Law Dictionary Definition of "probation" bolsters my position. The primary definition of probation is "[a] court-imposed criminal sentence that, subject to stated conditions, releases a convicted person into the community instead of sending the criminal to jail or prison, usu. on condition of routinely checking in with a probation officer over a specified period of time." *Probation*, BLACK'S LAW DICTIONARY (11th ed. 2019). The majority references a secondary definition, which defines "[t]he period of time during which a sentence of probation is in effect." Maj. Op. at 15 n.11. However, that secondary definition makes little sense in the context of conditions in Section 9771. Replacing the word "probation" with its dictionary definition is only understandable using the primary definition. Put another way, the conditions of the probation are the conditions of "a court imposed criminal sentence," not the conditions of "the period of time during which a sentence of probation is in effect."

probation "as it deems necessary to ensure or assist the defendant in leading a law-abiding life." 42 Pa.C.S. § 9754(b). When a defendant commits a new crime, he alters the balance struck by the sentencing court when it weighed the defendant's rehabilitative needs against the need to protect the public and concluded that probation was appropriate. This is true even if the crime is committed while incarcerated or while on parole before the probationary term has begun. To suggest, as the majority does, that the conditions of probation only apply during the term of probation would mean that a defendant's rehabilitation and pursuit toward a law-abiding life – the entire purpose of the order of probation – is meaningless prior to the day the probationary term begins. Instead, the conditions of probation must attach at the time the order is issued and are not exclusive to the term of probation.

My view on this matter is not novel. The understanding that a defendant must live a law-abiding life to be entitled to serve his sentence in public rather than in confinement has shaped the law and impacted sentencing decisions for decades. "A probation *order* is conditional by its very nature." *Commonwealth v. Nicely*, 638 A.2d 213, 217 (Pa. 1994) (emphasis added). In describing the underlying purpose of probation and related policy considerations, this Court has stated:

> [T]he basic objective of probation is to provide a means to achieve rehabilitation without resorting to incarceration. When it becomes apparent that the probationary *order* is not serving this desired end the court's discretion to impose a more appropriate sanction should not be fettered. Initially, when the court decides to impose a probation order it is only after first balancing the interest of society in protecting against possible future criminal behavior of the individual with the benefit he would receive by remaining free from prison. Certainly, society has the right to expect a prompt hearing when a probationer has allegedly engaged in a course of criminal activity.

*Commonwealth v. Kates*, 305 A.2d 701, 708 (Pa. 1973) (emphasis added).[3]  The Superior

Court relied on similar foundational principles in *Commonwealth v. Wendowski*, 420 A.2d

628 (Pa. Super. 1980), when it held over forty years ago that it is possible to violate the

conditions of probation before the probationary term itself begins:

> If, at any time before the defendant has completed the maximum period of probation, or before he has begun service of his probation, he should commit offenses of such a nature as to demonstrate to the court that he is unworthy of probation and that the granting of the same would not be in subservience to the end of justice and the best interests of the public, or the defendant, the court could revoke or change the order of probation.  A defendant on probation has no contract with the court.  He is still a person convicted of crime, and the expressed intent of the [c]ourt to have him under probation beginning at a future time does not change his position from the possession of a privilege to the enjoyment of a right.

*Id.* at 630 (quoting *James v. United States*, 140 F.2d 392, 394 (5th Cir. 1944)) (internal

quotations omitted).[4]

It is with this overarching understanding of the purpose of probation in mind that I

find it apparent the conditions of probation apply broadly to the imposition of a probation

order in general, rather than specifically during the probationary term.  Furthermore,

consideration of the related statutes governing orders and conditions of probation *in pari*

*materia* supports my position.  Section 9754 is titled "Order of Probation" and states:

---

[3] The majority criticizes my reference to *Nicely* and *Kates*, as those cases did not concern revocation of probation before the start of the probationary term and *Kates* predated section 9771.  Maj. Op. at 19-20.  While it is obvious that these cases do not directly decide today's issue, they are nevertheless important in understanding the foundational legal principles underlying probation.  My core position is that the majority's decision today cannot be reconciled with the fundamental objective and purpose of probation.

[4] As discussed below, and recognized by the majority, "there was widespread reliance on *Wendowski* and its progeny for many years up until the recent [*Commonwealth v. Simmons*, 262 A.3d 512 (Pa. Super. 2021) (*en banc*)] decision, and the abrogation of anticipatory revocation represents a significant change in sentencing practice[.]"  Maj. Op. at 29.

> **(b) Conditions generally. —** The court shall attach reasonable conditions authorized by section 9763 (relating to conditions of probation) as it deems necessary to ensure or assist the defendant in leading a law-abiding life.

42 Pa.C.S. § 9754(b).  Relatedly, section 9763 is titled "Conditions of probation" and states: "The court may attach any of the following conditions upon the defendant as it deems necessary."  42 Pa.C.S. § 9763(b).  The majority suggests that "[t]hese statutes concern **what** conditions may be imposed on probation . . . not **when** these conditions apply."  Maj. Op. at 22.  I respectfully disagree.  These statutes make clear that the conditions of probation are not limited to the probationary term. Conditions are attached "upon defendant" (section 9763(b)) and are applied at the time the court imposes the order of probation (section 9754(b)).  The core purpose of the conditions is to "ensure or assist the defendant in leading a law-abiding life."  42 Pa.C.S. § 9754(b).  The requirement to lead a law-abiding life is a prerequisite to the very existence of an order of probation. Nothing about these statutes or probation generally suggest that this requirement is irrelevant until the day probation begins, yet that is the conclusion reached by the majority.[5]

---

[5] The only support the majority provides for its position is the suggestion that "[h]ad the legislature intended a violation of the conditions of the order or probation to be sufficient for revocation, it would have said so, and the pertinent language of subsection (b) would instead permit revocation upon proof of the violation of specified conditions of the **order of** probation."  Maj. Op. at 14 (emphasis in original).  However, the legislature could have just as easily had the revocation statute require proof of the violation of specified conditions **while on** probation.  As the statute exists, there is no qualifying language to the word "probation," suggesting that the conditions relate to probation broadly, and not limited to the term of probation. Nevertheless, as explained *supra*, the related statutes governing orders and conditions of probation make clear that the conditions are not exclusive to the probationary term.

The majority also suggests that "for many defendants, like Rosario, who are sentenced to a term of imprisonment followed by a consecutive period of probation, it would be impossible to comply straight away upon sentencing with all of the conditions noted in section 9783(b)," such as attending a rehabilitative facility or other intermediate punishment program. Maj. Op. at 22.  Certainly, it is not a violation of probation to fail to comply with an impossible condition.  This is true even during the term of probation, for

Thus, because the statute allows revocation "upon proof of the violation of specified conditions of probation" and a violation can occur even before the probationary term has begun, I believe that the plain language of the statute permits the practice of revocation of probation prior to the start of the probationary term. I reach this conclusion fully recognizing that revocation is not listed as an action the court can take "at any time" according to the statute. 42 Pa.C.S. § 9771(a) ("The court has inherent power to at any time terminate continued supervision, lessen the conditions upon which an order of probation has been imposed or increase the conditions under which an order of probation has been imposed upon a finding that a person presents an identifiable threat to public safety."). The majority concludes that "[t]he implication of this omission is that revocation cannot be ordered at any time but rather is subject to temporal limitations, *i.e.*, revocation is permissible solely during the term of the probation itself." Maj. Op. at 13-14. I find the majority's reliance on implication unnecessary, as the plain language of the statute itself clearly reveals that revocation can occur at any time following a hearing. Section 9771(d) states:

> **(d) Hearing required. —** There shall be no revocation or increase of conditions of sentence under this section except after a hearing at which the court shall consider the record of the sentencing proceeding together with evidence of the conduct of the defendant while on probation. Probation may be eliminated or the term decreased without a hearing.

example if upon release from incarceration there is no space available to attend a rehabilitative facility. That does not make all other possible conditions, especially the general condition to lead a law abiding life, a nullity until every condition is possible. Under the majority's logic, if it is a condition to participate in a particular treatment or education program, a defendant does not need to begin such a program until the probationary period begins even if it is available while incarcerated.

42 Pa.C.S. § 9771(d). And so, the reason revocation cannot occur "at any time" is not a temporal limitation, but the hearing requirement.[6] I also recognize that the statute states that during such hearing the court "shall consider . . . evidence of the conduct of the defendant while on probation." *Id.* Yet, unlike the majority, I do not believe this language is restrictive. The statute does not prevent the court from considering the conduct of the defendant prior to the term of probation. And so, subsection (d) does not foreclose revocation prior to the start of the probationary term, there is simply no "conduct of the defendant while on probation" for the court to consider at that time. *Id.*[7]

Although I find the plain language of the statute permits a court to revoke probation prior to the start of the probationary term, any ambiguity as to the legislative intent is wholly resolved by legislative acquiescence. The Superior Court decided *Wendowski* in 1980. Since that time, anticipatory revocation has become a prevalent practice that has

---

[6] The majority attempts to rebut my conclusion by suggesting that "inclusion in section 9771(d)'s hearing requirement does not dictate exclusion from [actions that can occur at any time under] section 9771(a)," as exemplified by the fact that an increase in conditions is included within both subsections. Maj. Op. at 14 n.10. However, an important statutory qualification is that an increase may only occur "at any time . . . *upon a finding that a person presents an identifiable threat to public safety*." 42 Pa.C.S. § 9771(a) (emphasis added). Thus, only when a person presents an identifiable threat may a court increase the conditions of probation "at any time" under subsection (a), whereas any other increase in conditions must occur after a hearing under subsection (d). *See,* 1 Pa.C.S. § 1933 (Particular controls general). Following the majority's logic, an increase in conditions is included in subsection (a) because it is not temporally limited, and yet an increase in conditions also requires a hearing, which the majority deems is temporally limited and must occur during the probationary term. This is inherently inconsistent.

[7] Similarly, the majority relies on the sentencing portion of section 9771(b), which states, "[u]pon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation." As with the requirements of subsection (d), when a defendant violates the terms of probation prior to the start of the probationary period, the court simply must consider the fact that the defendant spent no time serving the order of probation when deciding the appropriate revocation sentence.

provided flexibility to sentencing decisions for decades.[8] As the majority recognizes, the legislature has renumbered and amended section 9771 several times in the last forty years but has never made any material changes to the statute. Maj. Op. at 25. Our rules of statutory construction call for the presumption that "when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language." 1 Pa.C.S. § 1922(4). Importantly, "notwithstanding the clear import of § 1922(4) that it applies only where this Court has furnished a construction, this Court has recognized the extension in principle of § 1922(4)'s presumption to cases decided by the Superior Court." *Commonwealth v. Dickson*, 918 A.2d 95, 107 (Pa. 2007), *quoting In re Lock's Estate*, 244 A.2d 677, 682-83 (Pa. 1968) ("It has been held, and rightly so, that where a decision of the Superior Court construing a statute was never modified by the Supreme Court, the presumption was that when the legislature subsequently enacted a

---

[8] It is necessary to emphasize the Commonwealth's recognition that "the term 'anticipatory revocation of probation' appears to be almost unique to Pennsylvania law, and of fairly recent origin." Appellant's Brief, at 11. Indeed, the term seems to have first appeared in an unpublished Superior Court case from 2014. *See, Commonwealth v. Wilson*, 891 EDA 2013 (Super. Ct. 2014) (trial court ruled "that Wilson violated his parole and anticipatorily violated his probation;" holding that "Wilson's disorderly conduct conviction constituted both a violation of his parole and the basis for an anticipatory revocation of probation."). The term then became more widely used following the Superior Court's published decision in *Simmons*.

The Commonwealth astutely notes that the term is a misnomer, as revocation in this context is not in "anticipation" of some future wrongdoing. Rather, the probation order sets forth expectations and conditions of probation, including the general condition to lead a law-abiding life. Thus, a conviction and subsequent revocation are reactionary actions to the defendant's commission of a new crime, not anticipatory ones. While I find the term problematic for this reason, it has nevertheless become used and relied upon in many cases, including this one. Thus, for sake of brevity and consistency, I use the term "anticipatory revocation" insofar as it means the revocation of a probationary order based on a defendant's misconduct that occurred prior to the start of the probationary term.

similar statute dealing with the same subject matter, the legislature intended the same construction to be placed on the language of the subsequent statute.")).

The majority dismisses this presumption, emphasizing that the statutory language is the most trustworthy source for interpreting legislative intent. Maj. Op. at 25-26. I agree that the plain language of the statute controls. However, assuming *arguendo* that the language of the statute is ambiguous, I cannot imagine a more definitive example of legislative acquiescence than here. For decades, trial courts have revoked probation when a defendant made clear that probation would not serve its rehabilitative purpose by committing a new crime before the probationary term had begun. The Superior Court followed *Wendowski* and consistently affirmed countless instances of anticipatory revocation in the years that followed. *See Commonwealth v. Dickens*, 475 A.2d 141, 144 (Pa. Super. 1984) ("The fact that appellant had not commenced serving probation when the new offense occurred did not prevent the court from revoking its prior order placing appellant on probation. . . . If the new offense is committed at any time before the maximum period of probation has been completed, probation may be revoked."); *Commonwealth v. Miller*, 516 A.2d 1263, 1265 (Pa. Super. 1986) ("If a probationer's criminal conduct, even if committed prior to commencement of the probationary period, discloses that probation will not be in the best interests of the public or the defendant, a court may revoke . . . The commission of a new crime violates an implied condition of probation and suggests that the defendant is a poor probation risk."), *appeal denied*, 528 A.2d 956 (Pa. 1987); *Commonwealth v. Ware*, 737 A.2d 251, 253 (Pa. Super. 1999) ("[T]he court had the authority to revoke appellant's probation despite the fact that, at the time of revocation of probation, appellant had not yet begun to serve the probationary portion of her split sentence and even though the offense upon which revocation of probation was based occurred during the parole period and not the probationary period."),

*appeal denied*, 747 A.2d 900 (Pa. 1999); *Commonwealth v. Castro*, 856 A.2d 178, 180 n.1 (Pa. Super. 2004) ("Appellant was found in violation of his parole, which he was serving at the time of his arrest, and in anticipatory violation of his probation, which had not yet begun to run. Such a finding is proper[.]"); *Commonwealth v. Allshouse*, 33 A.3d 31, 39 (Pa. Super. 2011) ("Appellant's probation was revoked prior to its commencement on the basis that Appellant was a danger to society and, therefore, unworthy of probation.").

Given the prevalence and wide acceptance in the courts for over forty years permitting revocation prior to the start of the probationary term it seems exceedingly unlikely that the legislature was either unaware of the practice or uninterested in correcting decades of improper revocation. Instead, I would presume, as our rules of statutory interpretation advise, that the General Assembly has not materially changed section 9771 because *Wendowski* and its progeny comport with the legislative intent of the statute – that revocation prior to the start of the probationary term is permissible.

I also agree with the Commonwealth that it is an absurd result to suggest that a defendant could commit a new crime with impunity – as far as the status of his probation is concerned – until the day he is actually serving the probationary period. Brief for Appellant at 29 (quoting *Wright v. United States*, 315 A.2d 839, 842 (D.C. App. 1974); *see also* 1 Pa.C.S. § 1922(1) ("[T]he General Assembly does not intend a result that is absurd, impossible of execution or unreasonable."). The majority posits that this is not an issue, because a defendant who commits a new crime while on parole is subject to revocation of his parole in addition to separate punishment for his new offense. Maj. Op. at 27. However, this entirely ignores the need to rectify the true problem that, by committing a new crime, the defendant has shown a probationary term is not a sufficient method of rehabilitation. Put another way, the majority's interpretation means that a

sentencing court has no method of correcting its sentence after a defendant acts in a way that wholly alters the underlying balance between his rehabilitation and the protection of the public upon which the probationary sentence was premised. Given the purpose of probation and its inherently conditional nature explained above, I believe such a result is absurd and unreasonable.[9]

Further, I disagree with the majority's analysis of statutes *in pari materia*. *See* 1 Pa.C.S. § 1932. The statute concerning sentencing generally states that a court may impose a sentence of probation "consecutively or concurrently[.]" 42 Pa.C.S. § 9721(a). Additionally, the statute governing orders of probation requires the court to "specify at the time of sentencing the length of any term during which the defendant is to be supervised[.]" 42 Pa.C.S. § 9754(a). The majority suggests that revocation of a consecutive probation sentence before its term begins runs contrary to these related statutes because "the probation sentence is effectively both concurrent **and** consecutive, in contravention of the plain language of section 9721(a)." Maj. Op. at 18 (emphasis in original). The majority also suggests that anticipatory revocation "effectively lengthens the term of probation beyond the fixed term specified at sentencing." *Id.* However, these arguments are premised upon the majority's conclusion that the conditions of probation

---

[9] I recognize that in certain circumstances, such as here, there is little practical effect to revocation of probation, as the nature of the offense that established the violation of probation is so serious and the sentence so lengthy that it is unlikely the defendant will ever serve the underlying probation anyway. However, it is easy to envision when the practical implications of anticipatory revocation will be exceedingly important, if not necessary, in order to uphold the purpose of probation and protect the public. For example, under the majority's interpretation, a defendant can assault a corrections officer or fellow inmate while incarcerated without tarnishing his ability to serve a consecutive probationary sentence, despite clearly exhibiting he is not leading a law-abiding life and continues to be a danger to society. Similarly, a defendant convicted of stalking could go directly to his victim's home the day he is released on parole with no repercussions to a future probationary term. According to the majority, those hypothetical defendants did not violate the conditions of their probation. That is an unreasonable conclusion that I cannot join.

do not attach until the probationary term has begun. As I explained fully above, the statutes governing orders and conditions of probation make clear that the majority's conclusion on that matter is incorrect, as the conditions are attached to the order of probation and defendant generally, not the term of probation. 42 Pa.C.S. § 9754(b); 42 Pa.C.S. § 9763(b). Viewing probation as fundamentally conditional, nothing about anticipatory revocation improperly lengthens a consecutive term of probation. The probationary term is fixed and gives a defendant the opportunity to serve his sentence outside of incarceration during that specified length of time, but the existence of that privilege is conditioned upon leading a law-abiding life.

I also disagree with the invocation of the rule of lenity. As the majority aptly recognizes, "the rule applies if *at the end of the process* of construing what [the legislature] has expressed, there is a grievous ambiguity or uncertainty in the statute." *Shaw v. United States*, 580 U.S. 63, 71 (2016) (internal quotations and citations omitted, emphasis added). The rule of lenity "provides a means of assuring fairness to persons subject to the law by requiring penal statutes to give clear and unequivocal warning in language that people generally would understand, as to what actions would expose them to liability for penalties and what the penalties would be." *Sawnick, Inc. v. Philadelphia Parking Authority*, 34 A.3d 926, 932 (Cmwlth. Ct. 2012) (quoting *Commonwealth v. Reaser*, 851 A.2d 144, 149 (Pa. Super. 2004)). The rule is unnecessary until "the end" of the statutory interpretation process. *Shaw, supra*. The revocation statute gives clear warning to probationers that the court may revoke "upon proof of the violation of specified conditions of the probation." 42 Pa.C.S. § 9771(b). As explained above, I do not believe the legislative intent regarding the revocation statute is so hopelessly ambiguous that it is necessary to resort to the rule of lenity.

Based on the foregoing, I believe it is clear that probation is fundamentally conditional, such that a defendant violates the conditions of his probation when he commits a new crime at any point after probation is imposed and before the conclusion of the probationary term. With that in mind, I find revocation prior to the start of the probationary term wholly permissible because the plain language of the statute allows a court to revoke "upon proof of the violation of specified conditions of probation." 42 Pa.C.S. § 9771(b). Any ambiguity is resolved by decades of legislative acquiescence to the practice and the fact that the opposite conclusion reached by the majority runs contrary to the fundamental purposes of probation. Accordingly, I dissent.

Justice Brobson joins this dissenting opinion.