## Commonwealth v. Beeren

*W. Bertram Waychoff,* District Attorney, for Commonwealth.

*John McIlvaine,* for defendants.

TOOTHMAN, P. J., December 21, 1973.—Defendants, Charles A. Beeren and Harold S. Colvin, were charged by the game protector, Wayne A. McGinness, with violation of section 704(c) of the Game Law of June 3, 1937, P. L. 1225, art. VII, as amended 34 PS §1311.704, which reads as follows:

"[I]t is unlawful to hunt for, catch, take, kill or wound, or attempt to catch, take, kill or wound any wild bird or wild animal of any kind through the use of . . . (c) or from an automobile or vehicle or boat

or craft of any kind, propelled by any mechanical power."

The specific wording of the complaint being:

". . . at Springhill Township on or about July 17, 1973, Harold S. Colvin and Charles A. Beeren . . . did then and there unlawfully use a motor vehicle, namely a 1964 Oldsmobile bearing Pennsylvania Registration Number D14-456, at or about 3:15 P.M., on July 17, 1973, using said vehicle from which to hunt ground hogs . . ."

In the facts testified to at a hearing, it developed that defendants were on their way from their home in Charleroi, and in the middle of the afternoon, a deputy game protector who lives in the western end of the county and happened to be out doing some patrolling, noticed them walking out of a meadow on the ridge road that goes to Aleppo, dressed in casual hunting clothes, each carrying a rifle. It was in what was characterized as varmint season, limited mostly to hunting groundhogs. The men then got in their car, and the deputy followed them in his car. He stated that as they travelled along the black-top road, their speed would alternate, first it would be slow, then they would speed up, and the next they turned at the first left, and on the road between the Hinerman and Simms farms, they came to a stop on the highway, and there they were scanning the bottoms, one with his naked eye, while the other used a pair of binoculars. They then started on, travelling up the valley road very slowly, on up to the top of the hill. There, he stated, they turned off on the township road and drove very slowly out past the Gallentine farms until coming to the Miller farm on the Hart's Run Hill, where they parked, got out with their rifles, and went out into the field. At this juncture, the deputy stated that he lost them because of some dense intervening foliage, but that

later he heard one shot fired. Later, they came by him in their car as he stood on the township road, out of sight, and stopped on the road, in fact, in the center. (Like most of our township roads, this road has only one main lane of travel, and for cars to pass, both of them must veer to the right side of the road.) Later, the deputy noticed them pass the Cunningham farm, turn at that place, stop again in the middle of the road, and get out of the car while both were scanning the fields nearby with binoculars. The protector said he had followed them in this pattern for seven miles, had witnessed them parked in the road on three occasions, and had seen them stopped on four other occasions. Defendant, Harold Colvin, was the driver the time of the surveillance and Charles Beeren was the passenger.

The deputy, on cross-examination, testified that at no time did he see either point a weapon out of the car, or fire from the car, nor did the driver use the binoculars while the car was moving. Defendants admitted travelling the roads as outlined, but denied they were hunting.

The district attorney and counsel for defendants, both of whom are avid hunters themselves, took divergent views on what is meant by this particular provision of the game laws, but both did agree that it has not been judicially construed before, and that some guidance in the meaning of this section of the act would be greatly beneficial to all sportsmen.

Defendants contend arduously that using their vehicle, a licensed vehicle, upon the roads in the fashion described was well within the purview of its lawful use under The Vehicle Code of April 29, 1959, et seq., 75 PS §101, et seq., and that until they were actually pointing or shooting from the car, no violation could be ascribed to their activities. Countering this,

the Commonwealth points out that using a vehicle in such a fashion so directly aiding and augmenting their search for killing or seizure of game is such conduct as to amount to using a vehicle unlawfully in violation of the Game Law.

With the latter position, we fully agree. The act states in unambiguous language that it is unlawful "to hunt for . . . or attempt to catch, take, kill, or wound" any animal "from an automobile" and these provisions of the act are found under the title, "Unlawful methods of hunting."

Black's Law Dictionary defines hunting as "[t]he act of pursuing and taking wild animals; the chase." Random House Dictionary gives some further meaning to the word, as being "to search a place thoroughly, to scour an area in pursuit of game." Thus, it is readily apparent that using an automobile to violate the provisions of this act does not have to be a use transforming it into the hunters' weapons-carrier, with their rifles bristling from the windows as it cruises along the byroads of an area, but rather, the legislative intent is violated when the car is used in such an obvious and overt manner as to make its use an integral part of the search, the scouring of the area, if you will, to seek out and locate the prey desired. The obvious and overt use of the vehicle exists here where the hunters, by their cruising along at a slower than usual rate of speed, alternately parking or stopping on the highway for the principal or primary purpose of visually locating game, coupled with their hastily parking in the highway, to facilitate the conquest of that game with their weaponry.

The reason for the restriction against road hunting would appear to be several-fold, among which is the fact that it enhances safety of the hunter himself, as well as other persons who may also be hunting, and it protects the landowner, his family and his livestock

from one who drives along indiscriminately searching for and killing game, without permission; and finally, not the least of the intended purpose of this restriction is to keep the highway as a usable thoroughfare for all of the travelling public. Anyone who has had the experience of travelling behind roadhunters, and their number would appear to be on the rise, will immediately identify the fact that anyone who uses the highway and a vehicle for hunting is unfairly usurping the rights of the land-owner, the travelling public and the law-abiding sportsman.

### ORDER

And now, December 21, 1973, the court has heard and considered the whole of the evidence in this case, and finds that the Commonwealth has sustained the burden of proof required of it, and finds each of you guilty of the violation of the Game Law, of the unlawful use or illegal use of a vehicle, in this case an automobile, to hunt game. You are each now sentenced to pay a fine of $50 each and costs. Upon that being paid forthwith, you will be released.