IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania   :
  :
      v.     :     No. 414 C.D. 2021
  :     Argued: September 11, 2023
Kim A. Rensel,   :
        Appellant   :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT           FILED: May 3, 2024

Kim A. Rensel appeals three orders of the Court of Common Pleas of Clearfield County (trial court), convicting him of summary offenses under the Game and Wildlife Code (Game Code).[1]  The first order convicted Rensel of "shooting on or across highways" in violation of Section 2504(a) of the Game Code, 34 Pa. C.S. §2504(a), and sentenced him to pay a fine of $150 "for the benefit of Clearfield County" plus costs of prosecution.  Trial Court Order, 12/7/2020.  The second order convicted Rensel of "unlawful taking or possession of game or wildlife" in violation of Section 2307(a) of the Game Code, 34 Pa. C.S. §2307(a), and sentenced him to pay a fine of $1,500 "for the benefit of Clearfield County" plus costs of prosecution and "replacement costs" of $1,666.66 to the Commonwealth.  Trial Court Order, 12/7/2020.  The third order convicted Rensel of use of "unlawful devices and methods" in violation of Section 2308(a)(7) of the Game Code, 34 Pa. C.S. §2308(a)(7), and sentenced him to pay a fine of $250 "for the benefit of Clearfield County" plus costs of prosecution.  Trial Court Order, 12/7/2020.  For the reasons

_____

[1] See 34 Pa. C.S. §§101-2965.

that follow, we reverse the trial court's orders that convicted Rensel of violating Sections 2307(a) and 2308(a)(7) of the Game Code. We affirm the trial court's order that convicted Rensel of violating Section 2504(a) of the Game Code and remand the matter to the trial court to consider the appropriate sentence.

## Background

The Keystone Elk County Alliance is a non-profit organization that preserves elk in Clearfield and Elk Counties. To raise funds, the Alliance conducts an annual raffle, with the approval of the Pennsylvania Game Commission, for the issuance of an early hunting license authorizing the kill of a single elk. In 2019, Richard Prentiss won the raffle, which also entitled him to professional guide services. Rensel and Gary Couteret, who are affiliated with Elk County Outfitters, volunteered to provide these services to Prentiss for a period of seven days, beginning on September 11, 2019.

On the third day of hunting, September 13, 2019, Rensel "was guiding Prentiss at different hunting locations." Trial Court Op. at 1. Ben Gnan accompanied them to film the hunt for potential use in a documentary. After leaving their first planned location for hunting, Rensel drove Prentiss and Gnan to the second planned location. The trial court found that as they were driving, "Rensel and Prentiss crossed paths with Couteret," who was traveling in a separate vehicle. *Id.* The trial court also found that Couteret stopped his vehicle on the road and told Rensel and Prentiss (who were still in the vehicle) that "there were elk in the field around the corner." *Id.* Couteret drove away, and Rensel parked his vehicle on the roadside. He and Prentiss walked across the road onto a field. As they did, a herd of elk moved into that field from the woods, followed by a large bull elk. At a point approximately 10 feet from the edge of the road, Prentiss took several shots at the

2

bull elk in the distance. The party later determined that the shots had succeeded in killing the elk.

On March 10, 2020, Prentiss, Rensel, and Couteret were each separately cited for their actions on September 13, 2019. In three citations, Rensel was charged with shooting on or across highways, 34 Pa. C.S. §2504(a); unlawful aiding, abetting, taking, concealing, or possessing wild game, 34 Pa. C.S. §2307(a); and use of a vehicle as an unlawful hunting device, 34 Pa. C.S. §2308(a)(7). After a hearing before the magisterial district judge, Rensel was found guilty of all three offenses.

Rensel appealed, and the trial court held a *de novo* trial on September 28, 2020.[2] On December 7, 2020, the trial court found Rensel guilty of three summary offenses, *i.e.*, 34 Pa. C.S. §§2307(a), 2308(a)(7), 2504(a). The trial court sentenced Rensel to pay fines of $1,900, plus costs of prosecution and "replacement costs" of $1,666.66 to the Commonwealth. Trial Court Orders, 12/7/2020.

With regard to the charge of hunting by "unlawful devices and methods," the trial court considered precedent under the current Game Code and its predecessor statute. In *Commonwealth v. Beeren*, 68 Pa. D. & C. 2d 93 (1973), for example, a defendant was found guilty of hunting by unlawful device because he used his vehicle to look for game. In *Commonwealth v. Cook*, 2 Pa. D. & C. 4th 240 (1989), the defendant, who happened to spot a deer while traveling on a highway, was acquitted of the crime of hunting by unlawful device after he stopped and shot the deer. In *Bonham v. Pennsylvania Game Commission*, 503 A.2d 76 (Pa. Cmwlth. 1985), this Court upheld the Game Commission's revocation of a hunting license for

---

[2] The evidence presented at the trial is more fully summarized in *Commonwealth v. Prentiss*, ____A.3d _____ (Pa. Cmwlth., No. 415 C.D. 2021, filed May 3, 2024).

3

one year on the basis of the licensee's conviction for using a vehicle as a device to hunt groundhogs.[3]  The trial court reasoned that the actions of Rensel fell "somewhere in between" the facts of the three cases.  Trial Court Op. at 6.  In its analysis, the trial court explained that, unlike *Bonham*, Couteret "was using his vehicle to search for elk, and when he found some, he stopped in the roadway to tell Prentiss and Rensel." Trial Court Op. at 6.  Although Rensel testified that he planned to park at that spot before encountering Couteret, the trial court noted that two days earlier, the party had parked the vehicle at the property owner's cabin, not on the highway next to the field.  Unlike the defendant in *Cook*, the hunting party did not walk the required distance from the highway.  The trial court opined that the facts of this case were "most analogous" to *Beeren*.  Trial Court Op. at 7.

Rensel appealed to this Court.

## Appeal

On appeal,[4] Rensel raises three issues for our consideration, which we combine into two for clarity.  First, Rensel argues that the trial court erred by not dismissing the 34 Pa. C.S. §2307(a) charge because the citation did not set forth the

---

[3] *Bonham*, 503 A.2d at 78, involved an appeal of the Game Commission's revocation of a licensee's hunting license under Section 315(3) of the Game Law of 1937, Act of June 3, 1937, P.L. 1225, *as amended*, *formerly* 34 P.S. §1311.315(3), repealed by the Act of July 8, 1986, P.L. 442, for his conviction for shooting an animal "from an automobile."  This Court did not, and could not, examine the merits of the conviction under Section 704 of the Game Law of 1937, *formerly* 34 P.S. §1311.704.  In any case, *Bonham* involved shooting "from an automobile," which did not occur here.

[4] "Our standard of review when evaluating the sufficiency of the evidence in a conviction for a summary offense is whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the [offense] charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt." *Commonwealth v. Austin*, 846 A.2d 798, 800 n.2 (Pa. Cmwlth. 2004).  In reviewing a question of statutory construction, our scope of review is plenary, and our standard of review is *de novo*.  *Spahn v. Zoning Board of Adjustment*, 977 A.2d 1132, 1142 (Pa. 2009).

basic elements of the offense as required by the Pennsylvania Rules of Criminal Procedure. Second, Rensel argues that the trial court erred in holding that the Commonwealth's evidence was sufficient to convict Rensel of the charges filed under Sections 2308(a)(7) and 2504(a) of the Game Code. Alternatively, Rensel contends the trial court was required, and failed, to apply the rule of lenity against the Commonwealth because the "road hunting" provisions in the Game Code are unclear, as acknowledged by the trial court.

Rensel's challenges to the trial court's construction of Sections 2307(a) and 2504(a) have been addressed and decided in *Commonwealth v. Prentiss*, ___ A.3d ___ (Pa. Cmwlth., No. 415 C.D. 2021, filed May 3, 2024). Herein, we consider Rensel's challenge to the trial court's construction of Section 2308(a)(7) of the Game Code. Separately, we consider whether the Commonwealth's evidence was sufficient to prove Rensel's violation of Section 2504(a) of the Game Code.

## Section 2308(a)(7) of the Game Code

Rensel argues that the trial court erred in convicting him for the use of "unlawful devices and methods" to hunt under Section 2308(a)(7) of the Game Code. Rensel contends that he did not use his vehicle as a device or method to seek or pursue game; rather, he drove to a pre-planned location to look for game on foot. Rensel contends that the case law precedent does not support his conviction.

We begin with the statute. Section 2308 of the Game Code, entitled "Unlawful devices and methods," sets forth a list of prohibited hunting devices. Section 2308(a)(7) states, in relevant part, as follows:

> **(a) General rule.--**Except as otherwise provided in this title, *it is unlawful for any person to hunt or aid, abet, assist or conspire to hunt any game or wildlife through the use of*:
>
> (1) An automatic firearm or similar device.

5

(2) A semiautomatic rifle or pistol, except as set forth in subsection (b.1).

(3) (Reserved).

(4) A semiautomatic shotgun or magazine shotgun for hunting or taking small game, furbearers, turkey or unprotected birds unless the shotgun is plugged to a two-shell capacity in the magazine.

(5) Deleted by 2016, Nov. 21, P.L. 1317, No. 168, §1, effective Jan. 20, 2017.

(6) Any recorded call or sound or recorded or electronically amplified imitation of a call or sound of any description or any other call or sound or imitation of calls or sounds which are prohibited by regulations of the commission. The commission shall be authorized, by resolution, to adopt rules and regulations authorizing the limited use of recorded calls or sounds or recorded or electronically amplified imitation of calls or sounds when such use is necessary in the commission's judgment to protect the public health and safety or to preserve that species or any other endangered by it.

(7) *A vehicle* or conveyance of any kind or its attachment propelled by other than manpower. Nothing in this subsection shall pertain to any of the following:

> (i) A motorboat or sailboat if the motor has been completely shut off or sail furled, and the progress thereof has ceased.

> (ii) A motorized wheelchair if the person has been issued a permit to hunt under section 2923(a.1) (relating to disabled person permits).

34 Pa. C.S. §2308(a)(7) (emphasis added). The Game Code defines "hunt" as follows:

> "Hunt" or "hunting." *Any act or furtherance of the taking or killing of any game or wildlife*, or any part or product thereof, and includes, but is not limited to, chasing, tracking, calling, pursuing, lying in wait, trapping, shooting at, including shooting

6

at a game or wildlife facsimile, or wounding with any weapon or implement, or using any personal property, including dogs, or the property of others, of any nature, in furtherance of any of these purposes, or aiding, abetting or conspiring with another person in that purpose.

34 Pa. C.S. §102 (emphasis added). This broad definition of hunting is complemented by Section 2301, which defines "*prima facie* evidence of hunting" as follows:

> **(a) General rule.--**For the purpose of this title, *any one of the following acts shall constitute prima facie evidence of hunting*:
>
> > (1) *Possession of any firearm*, bow and arrow, raptor, trap or other *device of any description usable for the purpose of hunting* or taking game or wildlife.
> >
> > (2) Possession of the carcass or any part or parts of any game or wildlife.
> >
> > (3) Pursuing game or wildlife in any manner prohibited by this title or commission regulation.

34 Pa. C.S. §2301(a) (emphasis added).

In *Cook*, 2 Pa. D. & C. 4th 240, the defendant spotted deer while traveling on a public road to rendezvous with a hunting companion. He stopped, exited his vehicle, walked into the field a legal distance from the public road, and took the deer. Because the defendant did not use his vehicle to pursue or take the game, the court acquitted the defendant on the charge for violation of Section 2308(a)(7) of the Game Code. In doing so, the court rejected the Commonwealth's contention that "one traversing the public highways during deer season and intent upon hunting who is otherwise legally complying with the act is prohibited from stopping the vehicle and shooting game observed in plain view while traveling the highway." *Id*. at 242. The court explained as follows:

7

> There is no language or fair implication thereof under this statute that prohibits an otherwise legal hunter from exiting his vehicle to take game observed in plain view. *The prohibition is "use of" a vehicle to take the game of wildlife, not a prohibition against traveling on a public road in a motor vehicle*.
>
> The intent of the legislature in our opinion was to *prohibit the use of a vehicle to pursue* game when the vehicle is compelled to leave the public way, thereby seeking out the game, and the taking thereof by an illegal method.

*Id.* at 243 (emphasis added). Stated otherwise, a violation of Section 2308(a)(7) of the Game Code requires more than traveling on a public way with the intention to shoot game, should any be spotted.

Rensel contends that his actions on September 13, 2019, align with the facts in *Cook*. His vehicle never left the public highway. Rather, he drove to a pre-determined hunting location; parked; walked across the road; and was "lucky enough to almost immediately find a trophy elk worth taking." Rensel Brief at 23.

The Commonwealth responds that "some form of hunting from vehicles" occurred in the instant case because Rensel was "driving around" when he met Couteret, who indicated to the group that elk were nearby. Commonwealth Brief at 12-13. In the Commonwealth's view, the fact that the hunting locations were pre-planned is irrelevant. The Commonwealth argues that because Rensel and his group "received information, through the use of a vehicle, of where a game animal was located," Rensel violated Section 2308(a)(7) of the Game Code. *Id.* at 14. The Commonwealth urges this Court to adopt the analysis of *Beeren*, 68 Pa. D. & C. 2d 93, where the defendant was convicted for unlawful use of a vehicle to hunt under Section 704 of the Game Law of 1937, *formerly* 34 P.S. §1311.704.[5]

---

[5] The Game Law of 1937 was repealed and reenacted in the Game Code, Act of July 8, 1986, P.L. 442, 34 Pa. C.S. §§101-2965.

8

The offense of unlawful use of vehicle was first established in the Game Law of 1937. Section 704, entitled "Unlawful Methods of Hunting," listed both unlawful weapons and methods of hunting. Subsection (a), entitled "Unlawful Methods and Devices," stated, in pertinent part, as follows:

> Except as otherwise provided, *it is unlawful to hunt for*, catch, take, kill, or wound, or attempt to catch, take, kill or wound *any wild bird or wild animal* of any kind through the use of (a) what is commonly known as an automatic gun or an automatic firearm of any kind; (b) or a magazine shotgun to hunt for any bird or animal, other than big game, which contains more than three shells at one time in the magazine and chamber combined, or a swivel gun or an air-rifle, or the apparatus known as a silencer; *(c) or from an automobile or vehicle or boat or craft of any kind, propelled by any mechanical power*[.]

Section 704(a) of the Game Law of 1937, *formerly* 34 P.S. §1311.704(a)(c) (emphasis added).[6] Because the Game Law of 1937 did not define "hunt," the court in *Beeren* relied on the dictionary definitions of hunting as "[t]he act of pursuing and taking wild animals; the chase[,]" or "to search a place thoroughly, to scour an area in pursuit of game." *Beeren*, 68 Pa. D. & C. 2d at 96 (citations omitted). Because the defendant used a vehicle to search for game, the *Beeren* court found that the defendant violated Section 704(a)(c) of the Game Law of 1937.

In the instant case, the trial court opined that the facts were "most analogous" to *Beeren*. Trial Court Op. at 7. *Beeren*, however, interpreted a statute that no longer exists, an important point neither considered nor addressed by the trial court. Further, the facts in *Beeren* are distinguishable from the instant appeal. In his search for game, the defendant in *Beeren* drove erratically, sometimes speeding

---

[6] Section 704(a) was a single paragraph with subsections denoted by letters, *i.e.*, "(a)" through "(f)." Beeren was convicted of violating Section 704(a)(c), but the *Beeren* court termed it Section 704(c). In actuality, Section 704(c) made it unlawful to kill big game in water.

up and sometimes slowing down and quickly stopping. No such evidence exists here. To the contrary, the video showed that Rensel's vehicle moved at a stately pace. The trial court erred in relying on *Beeren* because it is factually and legally distinguishable.

The Game Law of 1937 made it illegal to "attempt to catch, take, kill or wound any wild bird or wild animal of any kind through the use of" certain types of weapons listed in the statute "*or from an automobile or vehicle*[.]" 34 P.S. §1311.704(a)(c) (emphasis added). The current statute makes it a violation to "hunt or aid, abet, assist or conspire to hunt any game or wildlife *through the use of*" certain devices and methods listed in the statute, including "[*a*] *vehicle*." 34 Pa. C.S. §2308(a)(7) (emphasis added).

In *Beeren*, the defendant was found to have hunted "from a vehicle" by using it to "scour [] the area, if you will, to seek out and locate the prey desired." *Beeren*, 68 Pa. D. & C. 2d at 96. The defendant had no particular destination. Here, by contrast, the trial court found that Rensel "was guiding Prentiss at different hunting locations." Trial Court Op. at 1. Both Rensel and Prentiss testified that they were driving to a field on the Kolovoski property because they had "seen" the trophy elk in question "hanging out" there the prior two days. Notes of Testimony, 9/28/2020, at 46, 68 (N.T. __); Reproduced Record at 19, 24 (R.R. __). Rensel acknowledged that he and Couteret exchanged information while driving, and the latter indicated that "he had heard elk." N.T. 49; R.R. 20. However, Rensel explained that "[Couteret] knew I was going there, and he showed up knowing that I was going to be there. That's all."[7] N.T. 49; R.R. 20.

---

[7] The dissent opines that "common pleas could have reasonably inferred that by splitting up the way the group did in two vehicles, the two parties adopted a 'divide and conquer' approach, both

In short, unlike the defendant in *Beeren*, Rensel drove a vehicle to reach a pre-planned hunting destination. He was not driving erratically in order to "scour" the area for game, with no particular destination in mind.

The actual killing of the bull elk occurred on the Hoffman property, across the road from the Kolovoski property; the entire area is known as a traditional breeding ground, as confirmed by Mark Gritzer, the state game warden. N.T. 32; R.R. 15. The trial court noted that the day prior, the group had parked the vehicle at the property owner's cabin, not along the highway, but did not explain the significance of this observation. Rensel did explain the significance: he parked along the road so that he and his companions could access the field "from the far end." N.T. 48; R.R. 19. The trial court did not discredit this testimony, which simply establishes that there were two ways to access the same field.

Under the current Game Code, hunting is "any act" that furthers the "killing of any game" and "*is not limited* to . . . tracking, calling, pursuing, lying in wait, trapping, shooting at . . . or wounding" game. 34 Pa. C.S. §102 (emphasis added). Read literally, the "act" of driving a vehicle to a hunting camp constitutes "hunting" under the Game Code. *Id.* Notably, the mere presence of a firearm in a vehicle constitutes "*prima facie* evidence of hunting." *See* 34 Pa. C.S. §2301. *Cook* properly rejected such a literal reading of Section 2308(a)(7) of the Game Code.

Our objective in construing a statute is to ascertain and effectuate the intent of the General Assembly. "When the words of the statute are not explicit, the

---

using their vehicles to search out elk instead of just arriving at a pre-planned destination." *Commonwealth v. Rensel*, ____A.3d _____ (Pa. Cmwlth., No. 414 C.D. 2021, filed May 3, 2024) (Cohn Jubelirer, P.J., concurring and dissenting), slip op. at 8. This lacks a foundation in the record or in the trial court's findings of fact. The trial court did not put the Commonwealth to the task of presenting any evidence of what Couteret was doing on the morning in question, other than driving on public roads. The Commonwealth had the burden of proving its case beyond a reasonable doubt, and it did not meet this burden.

intention of the General Assembly may be ascertained by considering" specified factors, such as the "object to be attained." 1 Pa. C.S. §1921(c)(4). "A statute is ambiguous when it is reasonably susceptible of more than one interpretation or its language is vague, uncertain, or indefinite." *Synthes USA HQ, Inc. v. Commonwealth*, 236 A.3d 1190, 1201 (Pa. Cmwlth. 2020). The ambiguity of statutory language is determined by reference to the language itself, the context in which the language is used, and the statute as a whole. *A.S. v. Pennsylvania State Police*, 143 A.3d 896, 906 (Pa. 2016). We must presume "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa. C.S. §1922(1).[8]

Reading Section 2308(a)(7) within the context of Section 2308, as well as the entire Game Code, we conclude that it is unclear. The legislature did not define the phrase "through the use of a vehicle." The Merriam-Webster Dictionary defines "through" as "by way of[,] [e.g.,] left through the door[.]" MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/through (last visited April 17, 2024). The statute's prohibition against hunting "by way of" a vehicle leaves room for various interpretations.[9]

---

[8] The Statutory Construction Act of 1972 states, in pertinent part, as follows:

> In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:
>
> > (1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

1 Pa. C.S. §1922(1).

[9] The dissent uses the dictionary definitions and concludes that Section 2308(a)(7) of the Game Code is unambiguous. In the dissent's view, Section 2308(a)(7) prohibits use of a vehicle that is directly connected to the hunting activity at issue." *Rensel*, ____A.3d _____ (Pa. Cmwlth., No. 414 C.D. 2021, filed May 3, 2024) (Cohn Jubelirer, P.J., concurring and dissenting), slip op. at 6. However, we are bound by the statutory definitions. Section 102 of the Game Code defines

12

The Commonwealth argues that "some form of hunting from vehicles" occurred because Rensel was "driving around" when he met Couteret, who indicated to the group that he had heard elk. Commonwealth Brief at 12-13. This argument in itself expresses an ambiguity about what "form of hunting from vehicles" the Game Code prohibits. Here, Rensel was travelling on a public highway to a previously chosen hunting destination. Section 2308(a)(7) cannot be read to prohibit driving a motor vehicle on a highway to reach a hunting destination, which is a lawful use of a highway. *Cook*, 2 Pa. D. & C. 4th at 243. Nor can it be read to prohibit stopping a vehicle after a hunter drives on the highway and sees or hears game. *Id.* The Commonwealth's suggested construction of Section 2308(a)(7) renders it "absurd, impossible of execution or unreasonable." 1 Pa. C.S. §1922. Further, because Section 2308(a)(7) is penal in nature, it must be strictly, not loosely, construed. 1 Pa. C.S. §1928(b)(1) (requiring penal provisions to be strictly construed).

The Game Code defines "hunt" or "hunting" as "[a]ny act or furtherance of the taking or killing of any game or wildlife," which "includes, but is not limited to, chasing, tracking, calling, pursuing, lying in wait, trapping, shooting at . . . or wounding" game. 34 Pa. C.S. §102. The phrase "includes, but is not limited to" should "not be construed in [its] widest context, but [should] apply only to persons or things of the same general kind or class as those specifically mentioned in the list of examples." *McClellan v. Health Maintenance Organization of Pennsylvania*, 686 A.2d 801, 805 (Pa. 1996). We conclude that lawfully driving on

---

hunting as "any act" that furthers the "killing of any game." 34 Pa. C.S. §102. This leaves uncertainty on whether the "act" of driving a car on a public highway to a destination hunting camp constitutes "hunting." Read as a whole, the statute is ambiguous on what types of vehicular hunting it prohibits.

a public highway cannot be included in the list of using a vehicle for "chasing, tracking, calling, pursuing, lying in wait, trapping, shooting at . . . or wounding" an animal. 34 Pa. C.S. §102.

We adopt the view set forth in *Cook*, 2 Pa. D. & C. 4th at 243, that the General Assembly's intent in enacting Section 2308(a)(7) "was to prohibit the use of a vehicle to pursue game." *Cook* noted that causing a vehicle to leave the public way to pursue game is conduct that violates the Game Code. This interpretation aligns with the remainder of Section 2308, which prohibits the use of certain devices as weapons or methods in hunting wild game.[10] This includes hunting game or wildlife "*through the use* of (1) [a]n automatic firearm or similar device[,] (2) [a] semiautomatic rifle or pistol[,]" or "(4) [a] semiautomatic shotgun or magazine shotgun for hunting or taking small game, furbearers, turkey or unprotected birds unless the shotgun is plugged to a two-shell capacity in the magazine." 34 Pa. C.S. §2308(a)(1), (2), (4) (emphasis added). Likewise, Section 2308(a)(7) outlaws the use of "[a] vehicle or conveyance of any kind" as a weapon, such as using the vehicle to chase game or wildlife, turning on the headlights at night to cause the game animal to freeze, or leaving the public way to use a vehicle to seek out game. 34 Pa. C.S. §2308(a)(7). Section 2308(a)(7) does not prohibit the use of a vehicle on a public road to convey persons to a location where they can hunt on foot.

Rensel used his vehicle to convey hunters to a pre-planned hunting destination, which did not violate Section 2308(a)(7) of the Game Code. To violate Section 2308(a)(7) requires evidence that the vehicle functioned as more than a

---

[10] The heading of Section 2308 is "Unlawful devices and methods." Section 1924 of the Statutory Construction Act of 1972 provides, *inter alia*: "The headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute shall not be considered to control but may be used to aid in the construction thereof." 1 Pa. C.S. §1924.

means of conveyance but, rather, as the means to pursue or kill wild game. This did not occur here. Rensel's vehicle was not used to pursue or kill the trophy elk.

Lest there be any doubt, this construction is confirmed by the rule of lenity, as Rensel argues. The common law rule of lenity provides that

> [a]mbiguities should and will be construed *against the government*. This principle has its foundation in the rule of lenity that provides that any ambiguity in a criminal statute will be construed in favor of the defendant. The rule of lenity requires a *clear and unequivocal warning in language that people generally would understand*, *as to what actions would expose them to liability for penalties and what the penalties would be.*

*McGrath v. Bureau of Professional and Occupational Affairs, State Board of Nursing*, 146 A.3d 310, 316 (Pa. Cmwlth. 2016) (quoting *Richards v. Pennsylvania Board of Probation and Parole*, 20 A.3d 596, 600 (Pa. Cmwlth. 2011) (emphasis in original and added)).

In *Commonwealth v. Rosario*, 294 A.3d 338 (Pa. 2023), our Supreme Court applied both statutory construction principles and the rule of lenity to hold that a defendant may not be penalized for violation of a probation sentence he has not begun to serve. Summarizing the rule of lenity, the Supreme Court acknowledged that the rule has limits. It does not require "that the words of a penal statute be given their narrowest possible meaning or that legislative intent be disregarded." *Id.* at 350 (quoting *Commonwealth v. Nevels*, 235 A.3d 1101, 1105 (Pa. 2020)). Rather, courts must first use tools of statutory construction. The rule of lenity applies only "at the end of the process of construing what [the legislature] has expressed, [if] there is a grievous ambiguity or uncertainty in the statute[.]" *Rosario*, 294 A.3d at 350 (quoting *Shaw v. United States*, 580 U.S. 63, 71 (2016)).

15

In *Nevels*, 235 A.3d 1101, the Supreme Court rejected the defendant's challenge to his conviction under Section 4953 of the Crimes Code, 18 Pa. C.S. §4953, for retaliating against a witness who testified against him in his criminal trial. The defendant argued that Section 4953 was ambiguous on whether the statute applied to witnesses in criminal cases or in civil cases. The court rejected this argument because the definition of "witness" in the Crimes Code made it clear that it applied to criminal trials. The Court concluded that there was "insufficient ambiguity" in the statute to warrant application of the rule of lenity. *Nevels*, 235 A.3d at 1105.

Here, the Game Code does not define the phrase "through the use of a vehicle" as set forth in Section 2308(a)(7). Unlike *Nevels*, the statutory definitions of other terms used in Section 2308(a)(7) do not resolve ambiguity; rather, they make it less clear on what "use of a vehicle" to hunt will expose the vehicle's operator to criminal liability. Hence, after exhausting all tools of statutory interpretation, we conclude that there remains "a grievous ambiguity or uncertainty" in Section 2308(a)(7), which, under the rule of lenity, requires a construction of the statute against the Commonwealth.[11] *Rosario*, 294 A.3d at 350.

---

[11] Rensel does not raise and, thus, we do not consider whether Section 2308(a)(7) should be declared unconstitutional, or void, for vagueness. *See Commonwealth v. Barud*, 681 A.2d 162, 165 (Pa. 1996) ("The void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."). That a statute is unclear does not automatically render it unconstitutional under the void-for-vagueness doctrine; rather, the statute must be "so vague that men of common intelligence must guess at its meaning." *Knight v. Pennsylvania Board of Probation and Parole*, 510 A.2d 402, 403 (Pa. Cmwlth. 1986) (parole requirement was "unworkably vague" and therefore violative of constitutional due process).

16

## Section 2504(a) of the Game Code

Rensel also argues that the trial court lacked sufficient evidence to convict him under Section 2504(a) of the Game Code. Rensel's citation for a violation of Section 2504(a) states:

> The defendant did unlawfully cause or allow another person to shoot at game or wildlife (bull elk) after alighting from a vehicle being driven on a road open to public travel while being within 25 yards of the travelled portion of the roadway. Reference 34 Pa. C.S. Section 924(a) liability for action of others.

R.R. 5. In turn, Section 924(a) of the Game Code states:

> *A person who causes an unlawful act to be done by another* person which, if directly performed by the person causing the unlawful act would be in violation of this title, is *punishable as a principal*.

34 Pa. C.S. §924(a) (emphasis added).

The trial court emphasized that Rensel warned Prentiss that he could not shoot in or over the township road they crossed after leaving the vehicle. Rensel did not warn Prentiss that he needed to move farther into the field before taking his shot. In this respect, it appears that the trial court believed that Rensel participated in Prentiss' conduct in shooting too close to the road. In short, the trial court held that Rensel "caused or allowed" Prentiss to shoot the bull elk while standing within 25 yards of the highway, in violation of Section 2504(a) of the Game Code, which made Rensel's conduct punishable as a principal.

The parties' arguments with respect to Rensel's conviction under Section 2504(a) are identical to those raised in *Prentiss*, ____A.3d _____ (Pa. Cmwlth., No. 415 C.D. 2021, filed May 3, 2024). For the reasons stated in *Prentiss*, we hold that the trial court did not err in convicting Rensel for violating Section 2504(a) of the Game Code.

17

**Conclusion**

For the reasons stated in *Prentiss*, ____A.3d _____ (Pa. Cmwlth., No. 415 C.D. 2021, filed May 3, 2024), we hold that the trial court erred in not dismissing Rensel's charge under Section 2307(a) of the Game Code. We also hold that the trial court erred in convicting Rensel of a violation of Section 2308(a)(7) of the Game Code. We adopt the view set forth in *Cook*, 2 Pa. D. & C. 4th 240, that the General Assembly's intent in enacting Section 2308(a)(7) was to prohibit the use of a vehicle as a device or method to pursue or kill game, not as a means of conveyance on a public roadway. Finally, for the reasons stated in *Prentiss*, we affirm Rensel's conviction under Section 2504(a) of the Game Code. Because this Court adopts a new interpretation of Section 2504(a), which is contrary to the Superior Court's longstanding interpretation set forth in *Commonwealth v. Payne*, 995 A.2d 1239 (Pa. Super. 2010), we remand the matter to the trial court to consider the appropriate sentence, if any, for Rensel's violation of Section 2504(a) of the Game Code.

Accordingly, we reverse the trial court's orders that convicted Rensel of violating Sections 2307(a) and 2308(a)(7) of the Game Code. We affirm the trial court's order that convicted Rensel of violating Section 2504(a) of the Game Code and remand the matter to the trial court to consider the appropriate sentence.

_____
MARY HANNAH LEAVITT, President Judge Emerita

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania :
:
v. : No. 414 C.D. 2021
:
Kim A. Rensel, :
Appellant :

**O R D E R**

AND NOW, this 3rd day of May, 2024, the order of the Court of Common Pleas of Clearfield County in the above-captioned matter, dated December 7, 2020, convicting Kim A. Rensel of violating Section 2307(a) of the Game and Wildlife Code, 34 Pa. C.S. §2307(a), is REVERSED. The order of same date convicting Kim A. Rensel of violating Section 2308(a)(7) of the Game and Wildlife Code, 34 Pa. C.S. §2308(a)(7), is REVERSED. The order of same date convicting Kim A. Rensel of violating Section 2504(a) of the Game and Wildlife Code, 34 Pa. C.S. §2504(a), is AFFIRMED, and the matter is REMANDED for further proceedings consistent with the Court's opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 414 C.D. 2021 |
| | : | Argued: September 11, 2023 |
| Kim A. Rensel, | : | |
| Appellant | : | |

BEFORE:    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                    **HONORABLE MICHAEL H. WOJCIK,** Judge
                    **HONORABLE MARY HANNAH LEAVITT,** Senior Judge

**CONCURRING AND DISSENTING OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**          **FILED: May 3, 2024**

I agree with the Majority that the Court of Common Pleas of Clearfield County (common pleas) did not err in convicting Kim A. Rensel (Rensel) of shooting on or across highways in violation of Section 2504(a) of the Game and Wildlife Code (Game Code), 34 Pa.C.S. § 2504(a). I also agree that the citation charging Rensel with unlawful taking or possession of wildlife in violation of Section 2307(a) of the Game Code, 34 Pa.C.S. § 2307(a), was defective and that common pleas erred in not dismissing it. However, I part ways with the Majority's interpretation of the statute proscribing hunting through the use of a vehicle, Section 2308(a)(7) of the Game Code,[1] 34 Pa.C.S. § 2308(a)(7). Because the Majority engages in factfinding and common pleas did not err in convicting Rensel under Section 2308(a)(7), I must respectfully dissent with respect to the Majority's conclusion to the contrary.

---

[1] A violation of Section 2308(a)(7) of the Game Code is a summary offense of the third degree. 34 Pa.C.S. § 2308(c)(2). A third-degree summary offense is punishable by a fine of "not less than $250 nor more than $500." Section 925(b)(7) of the Game Code, 34 Pa.C.S. § 925(b)(7).

Before turning to the facts, I am mindful that where, as here, there is a challenge to sufficiency of the evidence,

> we must view the evidence in the light most favorable to the **Commonwealth** as verdict winner, accept as true all the evidence and all reasonable inferences upon which, if believed, the trial court could properly have based its verdict, and determine whether such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt. . . . Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded to the evidence produced. The fact finder is free to believe **all, part[,] or none** of the evidence.

*Mosher v. Commonwealth*, 494 A.2d 56, 57-58 (Pa. Cmwlth. 1985) (internal citations and quotation marks omitted) (emphasis added). "We regard this deferential manner of appellate review as according appropriate respect to the role of the . . . trial judge sitting without a jury to make credibility determinations and factual findings based on their weighing of the evidence which they hear firsthand." *In the Interest of: J.B.*, 189 A.3d 390, 408-09 (Pa. 2018). These bedrock principles of appellate review in mind, I turn to the facts as found by common pleas.

> This case involves three defendants [who] were involved in the shooting of a bull elk on September 13, 2019.[2] Richard Prentiss was granted the only early elk hunting license in Pennsylvania after winning a raffle conducted by the Keystone Elk County Alliance. As part of the raffle, Elk County Outfitters provided free guides to the winner. [] Rensel and Gary Couteret are employees of Elk County Outfitters who[] volunteered to act as guides to Prentiss during the week of September 11, 2019. On September 13, 2019, Rensel was guiding Prentiss at different hunting locations. After leaving their first location, Rensel and Prentiss crossed paths with Couteret as they were driving. Couteret, who was in a separate vehicle, stopped in the roadway to advise Rensel and Prentiss there were elk in the field around the corner. Upon parking and exiting the vehicle, Rensel and Prentiss walked

---

[2] The related appeals are *Commonwealth v. Couteret* (Pa. Cmwlth., No. 413 C.D. 2021, filed _____), and *Commonwealth v. Prentiss*, ___ A.3d ___ (Pa. Cmwlth., No. 415 C.D. 2021, filed May 3, 2024).

across the road, where Rensel asked if Prentiss had his firearm loaded and told him not to shoot across the road. Within ten feet of the edge of the road, Prentiss took a shot at the elk bull. The time period between exiting the vehicle and shooting the elk was less than two minutes.

(Common Pleas Opinion at 1-2.) More specifically, common pleas made several additional findings. "Prentiss and Rensel learned from Couteret that elk were in the field they were driving beside. They quickly parked the vehicle and crossed the road. Prentiss was only ten feet off of the road and shot the elk less than two minutes after exiting the vehicle." (*Id.* at 5.) Further,

Couteret was using his vehicle to search for elk, and when he found some, he stopped in the roadway to tell Prentiss and Rensel. **Even though[] the defendants assert they had planned to park on that same spot in the road**, the testimony was that the days prior[,] they had parked their vehicle at the property owner's cabin, **not** on the highway. . . . [T]he defendants did **not** walk the required distance from the roadway, **nor** were they **unintentionally** seeking out game while driving.

(*Id.* at 6-7 (emphasis added).)

The Majority insists, however, that the "Rensel drove a vehicle to reach a **pre-planned** hunting destination." *Commonwealth v. Rensel*, ___ A.3d ___, ___ (Pa. Cmwlth. 2024), slip op. at 11-12 (emphasis added). In support of that appellate **factfinding**, the Majority relies on Rensel's and Prentiss's testimony suggesting that where they stopped to shoot the elk is precisely where they had intended to end up. *Id.* at 9-10. However, common pleas, upon hearing that testimony, did **not credit** it because common pleas specifically found they **did not** end up at their pre-planned destination. Plenty of record evidence supports common pleas' finding, not least of which is the video in the record showing Couteret stopping Rensel's vehicle in the middle of the road, after which Rensel audibly clarifies where the elk is, and exclaims to the other passengers, "come on guys, let's get out." (Commonwealth

Ex. 1, Reproduced Record (R.R.) at 4, 21.)  Further, on redirect examination, the cameraman present in the vehicle with Rensel and Prentiss testified as follows:

Q:    So if you could remind me, what was the property they said they planned on hunting?

A:    I believe it's Kolovoski[.]

. . . .

Q:    Was that the property [] actually hunted on that day?

A:    It was **not**.

Q:    What was the property that was hunted on?

A:    It was across the road.

. . . .

Q:    Was it the Hoffman property?

A:    I believe so.  Sounds familiar.

(Transcript at 16-17, R.R. at 11-12 (emphasis added).)  In my view, the Majority has credited testimony it is clear common pleas did **not credit** and has exceeded **appropriate appellate review** by **finding its own facts**.  Common pleas, weighing the evidence and making credibility determinations, believed Rensel and Prentiss did not plan to stop where they shot the elk.

I turn next to the statutory text.  Section 2308(a)(7) of the Game Code makes it unlawful to "**hunt** or aid, abet, assist or conspire to hunt any game or wildlife through the use of . . . [a] vehicle . . . ." 34 Pa.C.S. § 2308(a)(7). "**Hunt**" is defined as "[a]ny act or furtherance of the taking or killing of any game or wildlife," **enumerating several acts**, "includ[ing], but [] not limited to, **chasing**, **tracking**, calling, **pursuing**, lying in wait, trapping, **shooting at**, . . .  or wounding . . . ." Section 102 of the Game Code, 34 Pa.C.S. § 102 (emphasis added).

Where, as here, we are called upon to interpret statutory text, our task is to discern legislative intent, the best evidence of which is the plain language of the statute. Section 1921(a) of the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa.C.S. § 1921(a); *Commonwealth v. Fithian*, 961 A.2d 66, 76 (Pa. 2008). The rule of lenity, codified at Section 1928(b)(1) of the Statutory Construction Act, 1 Pa.C.S. § 1928(b)(1), requires us to interpret **ambiguous** criminal statutes in favor the accused. *Fithian*, 961 A.2d at 74.[3] In addition, our Supreme Court has said that "we will give the benefit of any doubt as to [the] proper scope" of a criminal statute to the accused. *Commonwealth v. Allsup*, 392 A.2d 1309, 1311 (Pa. 1978). However, "courts are not required to give words of a criminal statute their narrowest meaning or disregard evident legislative intent." *Commonwealth v. Wooten*, 545 A.2d 876, 880 (Pa. 1988). Because the rule of lenity is applicable only where ambiguity is present, it bears emphasizing that "[a] statute is ambiguous when there are at least two reasonable interpretations of the text under review."[4] *Warrantech Consumer Prods. Servs., Inc. v. Reliance Ins. Co. in Liquidation*, 96 A.3d 346, 354-55 (Pa. 2014).

---

[3] Lenity has been a feature of Pennsylvania jurisprudence for centuries. *See Commonwealth v. Duane*, 1 Binn. 601, 609 (Pa. 1809) ("In nothing is the common law, which we have inherited from our ancestors, more conspicuous, than in its mild and merciful intendments towards those who are the objects of punishment. We apply the principles of this law to the construction of statutes.").

[4] I wish to emphasize that Rensel has **not challenged** Section 2308(a)(7) on **vagueness grounds**. The rule of lenity has been described as "a sort of junior version of the vagueness doctrine." *United States v. Lanier*, 520 U.S. 259, 266 (1997) (internal quotation marks and citation omitted). Courts have long recognized that it is an affront to the guarantees of due process for a statute not "to give fair warning of the conduct it criminalizes." *Commonwealth v. Magliocco*, 883 A.2d 479, 487 (Pa. 2005). To pass constitutional muster, criminal statutes must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Commonwealth v. Mikulan*, 470 A.2d 1339, 1342 (Pa. 1983) (quoting *Kolender v. Lawson*, 461 **(Footnote continued on next page…)**

Though potentially **broad**, I do not read the relevant statutory language of Section 2308(a)(7) implicated in this case as ambiguous. The statute prohibits hunting, which includes **pursuing** or **tracking** game, through the use of a vehicle. "Use" is defined, relevantly, as "[t]he act of putting something to work . . . for any . . . purpose" or "utilization or appropriation, esp[ecially] in order to achieve an end or pursue one's purpose." Oxford English Dictionary.[5] "Through," in this sense, means "[b]y means of; by the intermediate agency of; with the aid of[.]" *Id.*[6] The statute includes the words **chase**, **track**, and **pursue** within its definition of "hunt." "Chase" can mean "[t]o pursue for prey or sport[.]" *Id.*[7] "Track" means "[t]o follow up the track or footsteps of; to trace the course or movements of[.]" *Id.*[8] Pursue means "to follow (a[n] . . . animal . . .) with intent to overtake and capture, harm, or kill[.]" *Id.*[9] Dictionary definitions make clear that the statute prohibits, *inter alia*, following an animal with an intent to kill it, by way of, or with the aid of, putting a vehicle to work **for that purpose**. The statute thus provides that there must be a direct connection between the use of the vehicle and the hunting activity at issue—which dispenses with the Majority's fear that Section 2308(a)(7) could be used to criminalize the innocent conduct of driving from one pre-planned destination to

---

U.S. 352, 357 (1983)). Notably, the vagueness doctrine is predicated on a "rough idea of fairness" and does not "convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning . . . ." *Commonwealth v. DeFrancesco*, 393 A.2d 321, 327 (Pa. 1978) (quoting *Colten v. Kentucky*, 407 U.S. 104, 110 (1972)). Challenging a statute on vagueness grounds is an as-applied constitutional challenge, *Commonwealth v. Herman*, 161 A.3d 194, 204-05 (Pa. 2017), and such a challenge can, of course, be waived, *Commonwealth v. Gamby*, 283 A.3d 298, 304 n.7 (Pa. 2022).

[5] Available at https://doi.org/10.1093/OED/5979513410 (last visited May 2, 2024).
[6] Available at https://doi.org/10.1093/OED/8567775305 (last visited May 2, 2024).
[7] Available at https://doi.org/10.1093/OED/9290505342 (last visited May 2, 2024).
[8] Available at https://doi.org/10.1093/OED/4575949195 (last visited May 2, 2024).
[9] Available at https://doi.org/10.1093/OED/4007510790 (last visited May 2, 2024).

another, as the vehicle in that context is not being used **for the purpose** of, in the case of pursuit, **following** an animal with an intent to overtake, capture, harm, or kill it. Because the statutory text **itself** places limitations on what types of vehicular use subject a hunter to liability, I do not believe a resort to the absurdity canon, or the rule of lenity, is necessary here.

Of course, as the majority points out, "we are bound by the statutory definitions." *Rensel*, ___ A.3d at ___, slip op. at 12 n.9. The dictionary definitions discussed above of the terms "**chase,**" "**track**," **and** "**pursue**" are **in the statutory definition of the term "hunt**." 34 Pa.C.S. § 102. Those terms not being defined by the statute, it is entirely appropriate to the turn to dictionary definitions of those terms. Because the specific terms contained in the statutory definition of hunt address Rensel's conduct, we need not look to the more expansive catchall "any act" language. There may well be a scenario in which this Court must address the "any act" language, but this is **not** the case because we can locate Rensel's conduct in the specific enumerations in the statutory definition. Further, it is entirely appropriate to consult dictionary definitions of the terms "through" and "use" given that those terms are undefined in the statute.

The unambiguous statutory text proscribes Rensel's conduct. Common pleas found that Couteret was using **his vehicle** to search for, or in the words of the statute, track, elk. The statutory text does not prohibit driving "from point A to point B," but it does prohibit directly using one's vehicle to actually track game. When Rensel accepted his "tip" and then used that information to stop his vehicle and pursue the elk, he acted in violation of the statute's prohibition of **conspiring** to hunt through

the use of a vehicle.[10]  Common pleas could reasonably infer beyond a reasonable doubt that Couteret was indeed using his vehicle to **track** elk and that the hunting party was acting in concert.  It is undisputed that Couteret and Rensel both work for Elk County Outfitters and were both acting as Prentiss's guide throughout the period at issue here.  Further, common pleas could have reasonably inferred that by splitting up the way the group did in two vehicles, the two parties adopted a "divide and conquer" approach, both using their vehicles to search out elk instead of just arriving at a pre-planned destination.[11]

Neither Rensel nor the Majority identifies the precise "grievous ambiguity" sufficient to trigger the rule of lenity here.  *Rensel*, ___ A.3d at ___, slip op. at 15 (quoting *Commonwealth v. Rosario*, 294 A.3d 338, 350 (Pa. 2023)).  The Majority does not analyze which of the verbs encompassed in the statutory definition of hunting is at issue here, but seems to settle on the "including, but not limited to" language instead of analyzing whether tracking, chasing, or pursuing might be a candidate.  *Rensel*, ___ A.3d at ___, slip op. at 11.  Indeed, it turns to *McClellan v. Health Maintenance Organization of Pennsylvania*, 686 A.2d 801, 805 (Pa. 1996) (Opinion in Support of Affirmance), which relied on the canon of *ejusdem generis* to read a statutory catchall phrase in context.  *Id.*, slip op. at 12.  But missing from the Majority's opinion is an analysis of the possibility that it is not the catchall

---

[10] It is also reasonable to conclude that Rensel himself directly hunted through the use of a vehicle when, instead of safely driving to the pre-planned destination, he chose to park the vehicle in the middle of the road to enable the rest of the hunting party to more readily access the field where the elk were present, and where Prentiss violated Section 2504(a) of the Game Code.  *See Commonwealth v. Prentiss*, ___ A.3d ___, ___ (Pa. Cmwlth., No. 415 C.D. 2021, filed May 3, 2024), slip op. at 20.

[11] While this is not the precise logic relied upon by common pleas, it is well settled that, under the right-for-any-reason doctrine, we may affirm the trial court's decision on any basis that is supported by the record.  *Ario v. Ingram Micro, Inc.*, 965 A.2d 1194, 1200 (Pa. 2009).

"including, but not limited to" language doing the work, but rather one of the specifically enumerated verbs in the hunting definition.

There is no directly on-point mandatory authority of this Court or the Supreme Court as to the meaning of this statute, so the parties, and the Majority, turn to reported persuasive authority of courts of common pleas. I agree that *Commonwealth v. Beeren*, 68 Pa. D. & C. 2d 93 (1973), is of limited value given that it interpreted the now repealed version of the statute. In my view, the important difference is that the predecessor statute did not define the term "**hunt**," which the current statute does. The court of common pleas in *Beeren* turned to dictionary definitions of that term. *Id*. at 96. From those dictionary definitions, it developed a rule that the vehicle needed to be **integral** to the search, which does not appear in the statutory text. *Id.*

However, unlike the Majority, I would also eschew the atextual analysis of *Commonwealth v. Cook*, 2 Pa. D. & C. 4th 240 (1989). The *Cook* Court states that Section 2308(a)(7)

> prohibits the **taking** of game or wildlife through the **use** of a vehicle. There is no language or fair implication thereof under this statute that prohibits an otherwise legal hunter from exiting his vehicle to take game observed in plain view. The prohibition is 'use of' a vehicle to take the game o[r] wildlife, not a prohibition against traveling on a public road in a motor vehicle.

*Id*. at 243. The court explained, without citation or analysis of the language—an analysis the Majority adopts, *Rensel*, ___ A.3d at ___, slip op. at 14—the "intent of the legislature in our opinion was to prohibit the use of a vehicle to pursue game when the vehicle is compelled to leave the public way, thereby seeking out the game, and the taking thereof by an illegal method." *Cook*, 2 Pa. D. & C. 4th at 243. In reading the statute that way, the *Cook* Court focused on the statute's proscription

against "tak[ing] . . . game or wildlife[,]" but gave no effect to its prohibition against "hunt[ing.]" 34 Pa.C.S. § 2308(a). The analysis in *Cook* contravenes our well-settled, text-centric approach to statutory interpretation and offers extremely limited persuasive value.

Here, the hunting party acted in concert with the purpose of killing the elk, and by means of putting a vehicle to work directly toward that end, did ultimately kill the elk. The statute is not ambiguous, so there is no role for lenity to play. Because the plain language the General Assembly enacted in Section 2308(a)(7) prohibits the use of a vehicle in that way, and given common pleas' factual findings and our deferential standard of review, I would affirm Rensel's conviction under Section 2308(a)(7) of the Game Code.

_____
**RENÉE COHN JUBELIRER,** President Judge